STATE EX REL. NEACY, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*October 8—October 15, 1912.*

*Municipal corporations: Fixing ward boundaries: Legislative question: Equality in population: Invalid ordinance: Validation by subsequent statute: Constitutional law: Amending city charter: General or special law?*

1. Substantial equality in population is the primary object sought to be attained by ch. 436, Laws of 1901, giving to the common council in cities of the first class power periodically to "redistrict, readjust and change the boundaries of wards, so that they shall be as nearly equal in population as may be;" but *quære* whether the council may not lawfully consider the growth of population and make allowance for changes which that growth is reasonably certain to produce within a very short period in the future.

2. The question of the division of a city into wards is, in general, a legislative question.

3. The legislature may by a subsequent statute cure defects or irregularities in municipal proceedings which it might have dis-

State ex rel. Neacy v. Milwaukee, 150 Wis. 616.

pensed with or made immaterial by prior law, and such rati-
fication or curative effect may result by implication as well as
by direct legislative act.

4. Thus, even if an ordinance passed in an attempted exercise of
the power granted by ch. 436, Laws of 1901, was void when
passed, because the wards were not "as nearly equal in popula-
tion as may be," yet it was recognized and validated by the
subsequent enactment of ch. 661, Laws of 1911, bounding as-
sembly and senatorial districts by ward lines and expressly
providing that the wards therein referred to should be the
same as the wards fixed by said ordinance.

5. The act of 1911 being a general law reapportioning the state into
senate, assembly, and congressional districts, the mere fact that
it incidentally has the effect above stated does not bring it
within the prohibition of sec. 31, art. IV, Const., against
amendment of city charters by "special or private" law.

APPEAL from an order of the circuit court for Milwaukee
county: W. J. TURNER, Circuit Judge. *Reversed.*

This is an action in the nature of *quo warranto,* brought by
a taxpayer of the city of *Milwaukee,* challenging the right to
office of a number of the acting ward assessors of the city of
*Milwaukee* on the ground that an ordinance passed by the
city council June 20, 1911, redistricting the city, changing
the boundaries of wards, and forming a number of new wards
is void. The city of *Milwaukee* was joined as a defendant.
If the ordinance is void it is conceded that the defendants
have no right to the offices which they hold, because the as-
sessors who were in office at the time of the passage of the
redistricting ordinance would still be the lawful assessors.
The law under which the redistricting ordinance was passed
is ch. 436, Laws of 1901, which provides as follows:

"Section 1. The common council of all cities of the first
class, organized under special charter, may by a two-thirds
vote of all its members within two years after each state or
United States census is taken and the result thereof as to its
population is made known, redistrict, readjust and change
the boundaries of wards *so that they shall be as nearly equal
in population as may be,* and to that end such council may
create new wards and consolidate old ones, but no ward shall

be created having a population less than eight thousand nor exceeding twenty thousand. In redistricting such cities the original numbers of the wards and their geographical outlines shall as far as possible be retained, and the wards so created and those the boundaries of which are changed shall be in as compact form as possible."

The ordinance is attacked principally because the new wards are not made as nearly equal in population as practicable by the ordinance, but run from a minimum of 9,238 to a maximum of 19,517. It is not claimed that the disparity resulted from an attempt to gain political advantage by a gerrymander, but that the city council made allowance for future growth and gave to rapidly growing outlying wards a less population than the central wards, with the expectation that the population would soon be equalized by growth. A joint demurrer to the complaint on behalf of all the defendants was overruled by the trial court, and the defendants appeal.

*Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, for the appellants.

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *George P. Miller* and *J. G. Hardgrove.*

The decision was announced October 15, and the following opinion was filed October 29, 1912:

Winslow, C. J.   A number of objections to the plaintiff's procedure are made by the demurrants which we do not find it necessary to consider. The importance of a decision upon the merits is such that it would certainly not be good administration to base a decision upon some defect in procedure when it is possible to take up and decide the vital question in the case, namely, the question of the validity of the redistricting ordinance. The importance of an early decision upon this question is greatly increased by the fact that the general

biennial election is impending, the result of which might be wholly invalidated, or at least thrown into lamentable confusion, so far as the city of *Milwaukee* is concerned, if the question of the validity of the ordinance were now to be put aside and at some later period taken up and decided adversely.

We therefore proceed at once to a consideration of the ordinance. Here also we find it unnecessary to consider a number of the questions which were vigorously presented both in the briefs and upon the oral argument.

Undoubtedly substantial equality of population is the primary object sought to be attained by the law under which the ordinance was passed, but whether the council might not lawfully consider the growth of population and make allowance for the changes which that growth was reasonably certain to produce within a very short period in the future is a question upon which we express no opinion.

There is no constitutional requirement that a city shall be divided into wards of equal population, or that it shall be divided according to population. The general question of the division of a city into wards is a legislative question, at least within limits which have not been passed in the present case.

If, therefore, it were to be admitted, for the purposes of the case, that the ordinance was void when passed because the wards created by it were not "as nearly equal in population as may be," still, if the legislature by subsequent act recognized and ratified the ordinance, it undoubtedly became valid by such legislative ratification.

This court has frequently recognized the power of the legislature to cure by subsequent legislation defects or irregularities in municipal proceedings which it might have dispensed with or made immaterial by prior law. *May v. Holdridge,* 23 Wis. 93; *Single v. Marathon Co.* 38 Wis. 363; *Cawker v. Central B. P. Co.* 133 Wis. 29, 113 N. W. 419; *State ex rel. Clancy v. McGovern,* 100 Wis. 666, 76 N. W. 593. It is also well established that such ratification or cura-

tive effect may result by implication as well as by direct legislative act. *Fisk v. Kenosha,* 26 Wis. 23; *Knapp v. Grant,* 27 Wis. 147; *Hasbrouck v. Milwaukee,* 21 Wis. 217; *Campbell v. Kenosha,* 72 U. S. 194; *Mattingly v. District of Columbia,* 97 U. S. 687; *Brown v. Mayor, etc.* 63 N. Y. 239.

By ch. 661 of the Laws of 1911, published July 17, 1911, the legislature redistricted the state for legislative purposes, divided the county of Milwaukee into nineteen assembly districts and six senatorial districts, bounded the various districts by ward lines, and distinctly provided that the wards named in the law should be construed to be the wards· created by the ordinance in question.

This was beyond question a complete and unequivocal recognition and approval of the ordinance. It is argued that the act cannot be operative for this purpose for the reason that changing the ward boundaries of a city amounts to an amendment of its charter and is prohibited by sec. 31 of art. IV of the constitution. The objection falls because the constitutional provision cited only prohibits the amendment of a city charter by "special or private" law, and by no stretch of imagination can a statewide apportionment law be called either a special or private law.

So far as this case is concerned, ch. 661 of the Laws of 1911 must be considered as a valid general law. The mere fact that it incidentally affects a given locality in some of its provisions cannot logically make it a special or private law or deprive it of constitutionality.

*By the Court.*—Order reversed, and action remanded with directions to sustain the demurrer to the complaint.