MARIE E. KAYSER et al. v. BOARD OF EDUCA-
TION OF CITY OF ST. LOUIS and BEN BLEW-
ETT, Appellants.

In Banc, March 5, 1918.

1. **PUBLIC SCHOOLS: Equal Opportunities: Admission to Teachers'
College: Examinations.** All persons within the constitutional age
limit who possess the required qualifications for receiving the
course of study offered in a teachers' college if it is in full sense
a public school, and located in the district, are entitled to equal
opportunity of becoming students in said college; but this does not
mean that the school board, by prescribing a rule that graduates
of its own high schools may be admitted without examination, while
graduates of other schools must submit and pass reasonable exam-
inations as to their qualifications, is unjustly discriminating
against the graduates of such other schools. The two methods of
testing the qualifications of applicants relate to different conditions,
and both are reasonable.

2. ———: ———: **Examination: Discrimination: Limited to Highest
Grades.** A school board does not have the right to exclude ap-
plicants to a public high school, which is a free school in the
constitutional sense, by a system of competitive examinations
whereby admission is made dependent, not upon the applicant's
ability to pass a better examination than other applicants, but to
make "the highest averages in the examination." That would be
an unjust discrimination. But *query*: Can one who has not·
passed or submitted to any examination raise the point that a
rule limiting entrants to those who have made "the highest grades
in the examination" is unjust discrimination against her?

3. ———: **Teachers' College: Entrants Limited to Highest Grade:
Reasonable Regulation.** A rule of the school board requiring those
who desire entrance to a teachers' college to submit to a reasonable
examination as to their qualifications and declaring that "from
those passing the examination the number admitted to the college
will be determined by the prospective need of new teachers in the
public elementary schools of St. Louis and will be made up of those

making the highest averages in the examination" is not an unreasonable regulation or an unconstitutional discrimination. The teachers' college, even though it be supported by the public school fund mentioned in the Constitution, is not a public school in the same sense that elementary schools are public schools—open alike to all students of school age—but is one of limited attendance, and being such the school board may exercise a reasonable discretion in prescribing the terms by which the number may be limited, and if its rule is free from arbitrary and unreasonable prescriptions it is not subject to judicial alteration. A teachers' training school is not maintained primarily for the immediate benefit of the students therein, but for the purpose of obtaining a sufficient force of trained teachers based upon the needs and requirements of the grade and high schools.

4. ———: ———: **Power of Board to Maintain.** A teachers' training school, if not a part, is at least a permissible instrumentality, of the public school system of a great city, and the school board, in maintaining the system, has, at least, an implied power to expend such an amount of the school funds in training teachers as the best interests and the necessities of the public schools in the city require.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings,* Judge.

REVERSED.

*Robert Burkham* for appellants.

(1) A rule requiring the examination of applicants coming from other schools is valid if the Harris Teachers' College is a "free public school." Creyhon v. Board of Education, 163 Pac. (Kan.) 145. (2) A rule requiring the examination of applicants coming from other schools is valid, as the Harris Teachers' College is not a "free public school." It is but an instrumentality conducted by the Board of Education for the benefit of the St. Louis public school system. The institution is, therefore, not open to all, but admittance thereto may constitutionally be determined by such reasonable regulations as the board may from time to time adopt. Regents v. Painter, 102 Mo. 464; Gordon v. Carnes, 47 N. Y. 616; Normal School v. Auditors, 97 Va. 233; School District v. Bryan, 51

Wash. 498; State ex rel. v. Preston, 79 Wash. 286; Dickinson v. Edmundson, 178 S. W. (Ark.) 930.

*Kinealy & Kinealy* for respondents.

(1) School funds provided for in the Constitution can be used only for the maintenance of the State University and the constitutionally directed free public schools. Constitution, art. 9, secs. 1 and 6. (2) The Board of Education has no powers except such as are given it by law, and those are to conduct the free public schools provided for in the Constitution. R. S. 1909, sec. 11035; State ex rel. v. Tracy, 94 Mo. 217; Heller v. Stremmel, 52 Mo. 309. (3) The board has broad powers as to the establishment of schools and is not limited to any grade of instruction. Roach v. Public Schools, 7 Mo. App. 567. (4) The designation of schools as "common" or "public" has nothing to do with their grade but simply indicates that they are part of the school system of the State. 35 Cyc. 811; Roach v. Public Schools, 77 Mo. 484; Board of Regents v. Painter, 102 Mo. 464. (5) Rules for admission to public schools must give equal opportunities for entrance to all persons having like qualifications. State ex rel. v. McChesney, 237 Mo. 670; State ex rel. v. Clymer, 164 Mo. App. 671; Trustees etc. v. The People, 87 Ill. 303. (6) The Harris Teachers' College cannot be considered a "teacher factory" instead of a school because: (a) The board is not empowered to use public school funds for the purpose of conducting anything but a public school, much less a "factory" of any kind. (b) The statute specifically provides how teachers shall be obtained and that is an implied prohibition against "manufacturing" them. R. S. 1909, sec. 11035. (c) The board's own rules classify the Harris Teachers' College as a "school" conducted under its Department of Instruction.

WILLIAMS, J.—By this suit, instituted in the circuit court of the city of St. Louis, respondents seek to have declared null and void certain rules and regula-

tions made by the defendant concerning the admission of students to the Harris Teachers' College conducted by the defendants in the city of St. Louis, and to enjoin the defendants from enforcing said regulations against respondent Marie E. Kayser.

Defendants filed a demurrer to the petition, which was overruled, and the defendants refusing to plead further a decree was entered granting the relief prayed. Thereupon defendants duly appealed.

The petition, caption omitted, is as follows:

"Plaintiffs state that the defendant Board of Education of the city of St. Louis is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri and by law is vested with the general and supervising control, government and management of the public schools and public school property in the said city of St. Louis, and the defendant Ben Blewett is the Superintendent of Instruction duly appointed by the Board of Education and duly qualified and acting as such; that defendant Board of Education, under authority granted it by law, adopted, and at the times herein referred to had in force, rules for the government, regulation and management of the public schools and public school property in said city and for the transaction of its business; that said board maintains, conducts and operates a large number of schools for different purposes and of different classes and characters in accordance with the provisions of Rule 42 of its said rules, reading as follows, viz:

" 'RULE 42

" '*Kinds of Schools*

" 'Section I. The Board of Education shall maintain schools for white and for colored children.

" 'Sec. II. These schools shall be of the following kinds:

" 'A. District School and Kindergarten.

" 'B. High School.

" 'C. School for Training of Teachers.

" 'D. Evening District School.

" 'E.   Evening High School.

" 'F.   Vacation School.

" 'G.   School for Defectives.

" 'H.   School for Neglected and Dependent Children.

" 'I.   School for Delinquent Children.

" 'Sec. III.   To provide for the training of teachers for the grades and Kindergartens for white children, there shall be maintained a Teachers' College.

" 'Sec. IV.   For the training of teachers for the grades and kindergartens for colored children, there shall be maintained a course in connection with the High School for colored youth.

" 'Sec. V.   The Superintendent of Instruction shall prescribe the conditions for admission to, and graduation from, the Teachers' College, and the training course for teachers for grades and kindergartens for colored children, provided that the candidates for admission to them shall have educational qualifications at least equivalent to those required to complete a four years' High School course.

" ' Sec. VI.   The High School course shall include the four grades of the public school course following the district school course.'

"Plaintiffs state that the defendants conduct the department of education under their control and in said schools divided into several divisions in accordance with the provisions of the Rule 43 of said rules, reading as follows, viz:

" 'RULE 43

" 'Section 1.   The Department of Instruction shall be organized under the following divisions:

" '(1)   Harris Teachers' College.

" '(2)   Kindergarten and district schools—
   (a)   For white pupils.
   (b)   For colored pupils.

" '(3)   High Schools—

  (a) For white pupils.

  (b) For colored pupils.

" ' (4) Evening Schools—

  (a) For white pupils.

  (b) For colored pupils.

" ' (5) Special School for the deaf.

" ' (6) Special schools for individual instruction.

" ' (7) Open-air schools.

" ' (8) Industrial school.

" ' (9) Summer term—

  Harris Teachers' College

 High Schools.

 Grades.

 Grade manual.

" ' (10) Music.

" ' (11) Drawing.

" ' (12) Penmanship.

" ' (13) Physical Training.

" ' (14) Manual Training.

" ' (15) School hygiene.

" ' (16) Compulsory attendance.

" ' (17) Educational museum.'

"Plaintiffs state that the defendants conduct, and at all the times herein stated conducted, district schools for students up to what is known as the eighth grade of instruction, and five high schools for imparting instruction in the four grades following the district school course; and that defendants conduct, and at the times herein mentioned conducted, one teachers' training school, known as the Harris Teachers' College, for students having educational qualifications at least equivalent to those required to complete a four years' high school course.

"Plaintiffs state that for the purposes and uses of said Harris Teachers' College and for conducting, maintaining and operating same, the defendant Board of Edu-

cation purchased a large parcel of ground in the said city of St. Louis and about the year 1904 erected and equipped thereon a building, all at a total cost of over two hundred thousand dollars, and annually expends over thirty-five thousand dollars for maintaining same and over twenty-five thousand dollars for salaries for teachers employed therein; and that all of the said funds expended by said board in the acquisition of said lot and the erection of said building and the maintenance and conduct of said school were and are the proceeds of public taxes received by said defendant, and levied, assessed and collected in accordance with law for the maintenance of the free public schools provided for in and by the Constitution and law of the State of Missouri.

"Plaintiffs further state that on or about May 14, 1912, the defendant Ben Blewett, as such Superintendent of Instruction, and purporting to act under and by virtue of authority in him vested by law and in accordance with the provisions of section V of the aforesaid Rule 42 of the said Board of Education, formulated and prescribed certain regulations, requirements and conditions for the admission of students to said Harris Teachers' College, reading as follows, viz:

" 'Women, graduates of the St. Louis Public High Schools whose record places them within the standing of the highest two-thirds of their respective classes, will be admitted to the College without examination.

" 'Other graduates of the St. Louis Public High Schools and graduates of other high schools on the accredited list of the North Central Association of Colleges and Secondary Schools and of High Schools whose equipment and course of study are up to this standard, may be admitted to the Harris Teachers' College of St. Louis under the following conditions; (1) For those who wish to enter the college an examination will be held at the college building. (2) Written application for permission to take this examination must be sent to the principal of the college. This application must be

accompanied by a certificate of graduation from some high school of the above-described standard. (3) All candidates must pass a physical examination. (4) They must also be examined in the following subjects: English composition and literature; algebra to quadratics; plane geometry; general history; two of the following sciences—physics, chemistry, botany, physiology, physiography and zoology; and one of the following languages —Latin, Greek, French and Spanish. In this examination the candidate must make an average of seventy-five per cent. and not less than fifty per cent, in any subject. (5) From those passing this examination, the number admitted to the college will be determined by the prospective need of new teachers in the public elementary schools of St. Louis, and will be made up of those making the highest averages in the examination.

" 'Those admitted will be required to sign an agreement to teach at least two years in the public schools of St. Louis, if appointed and continued in the service by the Board of Education. Continuance in the course will be dependent upon satisfactory work. There will be no charge for tuition, text-books or incidentals.'

"Plaintiffs state that said regulations, requirements and conditions so formulated and prescribed by defendant Blewett as aforesaid were submitted to and approved by the defendant Board of Education on or about May 14, 1912, and ever since have been and are now enforced by defendants, and no persons are admitted to said Teachers' College as students except under and in accordance with said requirements, conditions and regulations; that by the St. Louis Public High Schools therein mentioned is meant the high schools maintained and conducted by the defendants as aforesaid; that under and by virtue of said requirements, regulations and conditions, places in said Harris Teachers' College to the number of two-thirds of the graduates of the public high schools conducted by the defendants are illegally and wrongfully withdrawn from the public and appropriated to the use of said graduates of said pub-

lic high schools; that under and by virtue of said regulations, two-thirds of the graduates from said public high schools are admitted to said Teachers' College without test or examination and all other persons seeking to become students in said school are wrongfully and unlawfully discriminated against by being required to file a written application and get leave to take an examination for admission, and by being required to take the examination in said regulations set forth and by the right to such admission being even then dependent upon the opinion of the said Superintendent of Instruction as to the prospective need of new teachers in the public elementary schools of said city of St. Louis; that said regulations, requirements and conditions are unreasonable and are violative of and repugnant to sections 1 and 6 of article 11 of the Constitution of Missouri and to the laws of Missouri relating to the public schools, and the defendants have no power or anthority under the Constitution and laws of Missouri to adopt or enforce same.

"Plaintiffs state that plaintiff Ferdinand C. Kayser is and has been for a great many years a tax-paying citizen, householder and head of a family, residing in said city of St. Louis and paying public taxes in excess of one hundred and fifty dollars per annum; that plaintiff Marie E. Kayser is the unmarried daughter of plaintiff Ferdinand C. Kayser, residing with him and a member of his family, and is under twenty years of age; that she has educational qualifications equivalent to those required to complete a four years' high school course, and has completed such a course in a school of a grade and standing equal to that of said public high schools conducted by defendants, and is a graduate of such school and is in every way competent and qualified to pursue the course of study prescribed and taught by defendants in said Harris Teachers' College, but she is not a graduate of the public high schools conducted by defendants.

"Plaintiffs state that they desire that plaintiff Marie E. Kayser should become a student in said Harris Teachers' College, but that defendants wrongfully and illegally have refused and still refuse to admit her to said school as such student except under and in accordance with the aforesaid unreasonable and illegal regulations, requirements and conditions prescribed and enforced by defendants, as aforesaid, for the admission of students to said school, and refuse to admit her as two-thirds of the graduates of said public high schools are admitted, and refused to admit her unless she files a written application and takes and passes the examinations provided for in said illegal regulations, requirements and conditions, and not even then unless the prospective need of new teachers in the elementary public schools shall, in the opinion of defendant Blewett, require it.

"Plaintiffs therefore pray the court to order, adjudge and decree the aforesaid regulations, requirements and conditions for admission of students to said Harris Teachers' College illegal, null and void as being unreasonable and violative of the laws of the State of Missouri relating to public schools, and of sections 1 and 6 of article 11 of the Constitution of Missouri; to order, adjudge and decree that defendants be enjoined from enforcing same against plaintiff Marie E. Kayser; to order, adjudge and decree that defendants be enjoined from enforcing as against plaintiff Marie E. Kayser any rule, requirement, regulation or condition for admission to said Teachers' College as a student therein which does not give equal opportunities for such admission to all persons possessing equal qualifications therefor; to order, adjudge and decree that plaintiff Marie E. Kayser is duly qualified to become a student in said Harris Teachers' College, or that defendants make such tests of her qualifications to become such as to the court shall seem reasonable, and that thereupon the defendants be ordered and directed to admit her as a student in said

school; and to grant plaintiffs such other and further relief in the premises as shall be equitable and just."

I. We are somewhat at a loss to know the *exact* theory upon which respondents seek the relief prayed, but, as we gather it from the brief, it may be stated in general terms as follows: That since Article 11 Section 1, Constitution of Missouri, provides for the establishment and maintenance of *"free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years"* and since Section 6 of the same article provides that the annual income from the State School Fund, together with portions of the revenue which shall be appropriated for school purposes, *"shall be faithfully appropriated for establishing and maintaining the free public schools . . . and for no other uses or purposes whatever,"* and since the Harris Teachers' College of the city of St. Louis is maintained by the use of a portion of the school fund mentioned in the Constitution, it necessarily follows that Harris Teachers' College is a public school in the sense that all persons having the required qualifications for admission as students therein should be admitted under the application of uniform regulations; that respondent Marie E. Kayser possesses the required qualifications for admission as a student therein, but that the rules concerning admission prescribed by the Board of Education of said city unjustly discriminate against her and deny to her the use of said school, as by the above constitutional provisions provided.

If the Harris Teachers' College is a public school, in the sense that the grade and high schools of said city are public schools, then all persons within the constitutional-age limit, possessing the required qualifications for receiving the course of instruction therein offered, should have an equal opportunity of becoming students therein.

This would not mean, however, that the school board, in prescribing a rule that graduates of its own schools

would be admitted without examination, while others who had graduated or finished courses elsewhere should pass a reasonable examination, had unjustly discriminated against the persons' so required to pass such reasonable examination test. This identical point was recently passed upon in a well reasoned opinion by the Supreme Court of Kansas. [Creyhon v. Board of Education, 163 Pac. 145, not yet officially reported.]

In that case the school board of the city of Parsons, by rule, provided that applicants having a county superintendent's diploma or a certificate of graduation from the eighth grade of the Parsons city schools or any other public school of equal rank, should be admitted as students in its high school, without examination; but that all other applicants should be required to pass an examination test. The court in holding that said rule did not deny, to those required to take an examination, the equal protection of the law, said:

"That children of suitable age are entitled to attend the public schools at the place of their residence is not doubted, but the department to which they are to be assigned is a matter to be determined under appropriate regulations adopted by the governing body. The board of education is charged with the duty of making rules for the government of the city schools. [Gen. Stat. 1915, sec. 9108.] It is proper, if not absolutely necessary, that some provisions should be made for determining whether an applicant who presents himself for admission to a particular department has had the preliminary training to justify his assignment thereto. Two obvious methods for accomplishing this result present themselves. One is to test the prospective pupil's actual qualifications by an examination; the other is to act upon the presumption in his favor arising from the character of the schools he has attended. There is room for the exercise of individual judgment as to the manner and extent to which the latter method should be applied. There is a fair basis for the classification of schools in this respect, and making a certificate of graduation

from schools of one class a substitute for an examination of a pupil, while denying that effect to such a certificate from schools of another class. For instance, if the board had seen fit to dispense with an examination in the case of graduates of the schools in the city, while requiring it of the graduates of outside schools of a similar kind, a just basis for the distinction could be found in the fact that the board could more conveniently determine the quality of work done by a school that was near at hand than by one at a distance. And such a distinction might reasonably be made between the public schools of the city and other schools located therein, because the board of education, having full control of the management of the public schools, would necessarily be fully advised of the character of work they were doing, so that further examination of their graduates would be superfluous. The same character of difference, though of less degree, exists between public and private schools, in whatever part of the State they may be situated. While the board of education of Parsons has no control over public schools outside of the city, its schools are a part of the same general system, all portions of which are subject to official visitation and regulation. The board has means for investigating and determining the evidential value of a certificate of graduation from a public school anywhere in Kansas, that are not available with respect to any school not under public management. The courses of study, the general methods pursued, the establishment of standards, are subject to legal regulation, How far in a particular instance they are conformed to may always be determined by investigation conducted as a matter of right. However efficient a private school may actually be, the board does not have, and cannot have, the same facilities for satisfying itself on the point. Any opportunity afforded it for investigating the question would depend upon courtesy and not upon law; would be a privilege and not a right. And while it might well avail itself of such an opportunity and treat the diploma of such a school as

a substitute for an examination if in its judgment the information acquired justified that course, a court can not control its action in that regard.''

Applying then the logic of the Kansas case which in our opinion is sound, to the one at bar, it follows that even though Harris Teachers' College is a free public school in the popular sense. of the word, yet the said rule of the Board of Education of the city of St. Louis, requiring examinations of certain applicants, would not be held to be an unfair discrimination against such applicants.

But proceeding further, and still assuming that the Harris Teachers' College is a public school in the same sense as a grade or high school is, what should be said with reference to sub-division 5 of the rule set forth in the petition, viz: '' (5) From those passing this examination the number admitted to the college *will be determined by the prospective need of new teachers* in the public elementary schools of St. Louis *and will be made up of those making the highest averages in the examination.*''

Here we see that the rule provides for limiting the number *even of those qualified* to receive the training offered, and when applied may possibly exclude many who have passed the required examinations.

If the school is a free public school in the popular sense, then it would inevitably follow, that as to one thus excluded, the rule would work an unfair discrimination. It does not occur to us that a school board would have the right to exclude prospective students from a public high school by a system of competitive examinations, thereby making the admission dependent, not upon the ability of the application to pass the test of a reasonable examination, but upon his ability to pass a better examination than his neighbor.

But respondent, in her petition, does not allege that she had passed the required examination but had been denied admission, by reason of the exercise of the power of limitation contained in subdivision 5 of the rule above mentioned, and, for that reason, is possibly not in

a position to urge that point as a ground of relief. We have thought it advisable to mention the points, however, for the purpose of developing the issues and to lead to a better understanding of the propositions to follow.

II.   But does it necessarily follow that merely because the Harris Teachers' College is supported by the public school funds mentioned in the Constitution, it is a public school in the same sense that the grade and high schools of said city are public schools, open to all alike and its number of students limited only by the number of qualified applicants for admission? We think it does not necessarily so follow.

And does it necessarily follow that if the said Teachers' College is not open to the whole public as are the grade and high schools, that its existence is not justified by the above mentioned constitutional provisions? Here again we think it does not necessarily so follow.

Respondents, as we gather their theory, do not undertake to say that the support of such a school is not warranted under the Constitution.   The respondents are not attempting in this proceeding to destroy or prevent the operation of the school, but are attempting only to have the daughter (one of the respondents) become a student therein; and, in their brief, respondents recognize that the capacity of the school, its purposes and objects no doubt considered, must, to some extent, be limited.   We quote the following from respondents', brief, page 20:

"In conclusion, we submit that defendants have the right to maintain the Harris Teachers' College, but that they have no right to restrict admission to the school to any particular class of persons in the community.   The regulations must be general in character so as to give all persons who come within the sphere of its activities, that is, have equal qualifications for pursuing the course of study therein taught, equal opportunities for admission.   This can be readily done

273 Mo.—42

by requiring all persons seeking admission to take the same examination and applying the same tests to all applicants alike. *If the places in the school are limited then such a common examination is almost imperative since there is no other impartial way of determining which of the applicants, to the number of places available, are the best qualified.*" (Italics ours.)

It would appear to us that if it be conceded that the school is one of limited attendance and that the school board would have the right to deny any qualified applicant, whether by competitive examinations, as suggested by respondents, or otherwise, the conclusion would inevitable follow that it is not a public school in the same sense that the grade or high schools are public schools. And if it be conceded that the attendance may be limited, who is to determine the requirements as to limitation? Undoubtedly the school board of said city under the statute giving it the right to make rules "for the government, regulation and management of the public schools in such city." [Sec. 11031, Revised Statutes 1909.] In the exercise of that duty they would be entitled to exercise a reasonable discretion in the matter and, absent arbitrary or unreasonable action, their decision in matters of that kind should, we think, be controlling.

Conceding then, *arguendo,* that the attendance of said school must be limited and that the school board may fix reasonable regulations as to admission, is the regulation in the present instance, which permits the best two-thirds of its high school graduates to enter without examination while all others can enter only by examination, an unjust discrimination against those who must take an examination?

If, as we have seen above, in the Kansas case, such a regulation governing entrance to a public high school (where every qualified applicant has, in a sense, an equal right under the law to enter) is not an unjust discrimination against those required to pass an examination, it can not be said that such a rule governing admission to a teachers' training school (where

the applicant does not enter as a matter of right, based upon qualification, but enters in conformity with a reasonable policy of administration based upon the needs and requirements of the purposes for which the school is established) would work an unjust discrimination against the applicant required to pass an examination.

We are, therefore, unable to discover wherein respondents have stated a cause of action justifying the relief sought.

We are of the opinion that the school board has the right to establish and maintain the teachers' training school and to limit its attendance to the demands reasonably necessary to insure a well qualified teaching force for its grade schools. That it at least has the implied power in "maintaining" the public schools of said city to expend such amount in training future teachers as the best interests of the public schools in said city and the necessities of the situation may require. We are also of the opinion that money so expended is expended for the purpose of "maintaining the public schools" of said city within the meaning of the above mentioned constitutional mandate; that such a school so conducted is not a public school in the popular sense that grade or high schools are public schools, and, therefore, open to all of the qualified public alike, but that it is a part of, or at least a permissible instrumentality of, the public school system of said city, and that the expenditure is justified because the results attained are supposed to redound to the direct benefit of the public schools of said city and to every child attending the same; that the school is not created, primarily, for the benefit of the immediate students therein, thereby differing in character from the grade or high schools; but for the benefit of the entire system of grade schools in said city and as a valuable auxiliary thereto; that while it is true the students attending said school do receive a personal benefit therefrom, yet such personal benefit is not one that the applicant has a right to demand, but comes only incidentally in the

working out of the greater objects sought to be attained, which greater objects, alone, justify the creation and maintenance of such a school.

We are, therefore, of the opinion that the decree entered by the learned trial court should not have been entered and that the same should be reversed. It is so ordered.

PER CURIAM:—The foregoing opinion by *Williams, J.*, in Division Two is hereby adopted by the Court in Banc. *Graves, C. J., Walker* and *Blair, JJ.*, concur; *Bond, Faris* and *Woodson, JJ.*, dissent.