ARTHUR W. LYNCH & another *vs.* COMMISSIONER
OF EDUCATION & others.

Suffolk.    April 3, 4, 1944. — September 14, 1944.

Present: FIELD, C.J., QUA, DOLAN, & WILKINS, JJ.

*State Teachers College. Education. Constitutional Law,* Education, Delegation of powers. *Statute,* Construction. *Words,* "Common schools," "Public schools," "General management."

The Commonwealth is not required by its Constitution to furnish free education in the State teachers colleges.

The power to make reasonable charges to residents of Massachusetts for tuition in the State teachers colleges and to require students therein to equip themselves with necessary books and supplies is conferred upon the department of education as an incident of its "general management" of the colleges under G. L. (Ter. Ed.) c. 73, as amended.

It is not an unconstitutional delegation of power for the Legislature to authorize the department of education to make and fix the amounts of charges to residents of Massachusetts for tuition in the State teachers colleges.

The exercise of a certain power by a State department for a number of years with the full knowledge of the Legislature properly might be considered in deciding whether such power was impliedly included in general powers given by statute to that department.

BILL IN EQUITY, filed in the Superior Court on September 11, 1943.

The suit was heard by *Walsh,* J.

*R. Clapp,* Assistant Attorney General, for the defendants.

*M. H. Sullivan,* (*R. E. Sullivan* with him,) for the plaintiffs.

DOLAN, J.   By this bill in equity the plaintiffs seek to enjoin the defendant Julius E. Warren, commissioner of education of the Commonwealth, "from imposing any charge for instruction and for books and supplies on" the plaintiffs "or either of them for the right of the" plaintiff Marie Lynch (a minor in whose name and behalf the plaintiff Arthur W. Lynch, her father, also brings the bill) "to take the courses for which she has matriculated" in the teachers college located at Framingham or in any other of

the State teachers colleges in which she may matriculate, and to enjoin the defendant Martin O'Connor, president of the State teachers college at Framingham "from collecting any charge for instruction and for books and supplies on" the plaintiffs "or either of them for the right of the" plaintiff Marie to take the courses at that college. The bill also seeks to enjoin the defendant members of the department of education in like manner. The plaintiffs are both inhabitants and residents of Boston. The case was heard before a judge of the Superior Court upon the pleadings and a statement of agreed facts. After hearing the judge entered an order that a decree be entered granting the plaintiffs the relief prayed for in the bill, and then reserved the suit for consideration by this court upon the pleadings, the statement of agreed facts and the order for final decree.

The material facts are these: There are nine teachers colleges established and maintained by the Commonwealth and among them is one located at Framingham which was established in 1839 as a normal school. The teachers colleges at Westfield and Bridgewater were established in 1839, that at Salem in 1854, that at Worcester in 1874, and those at North Adams, Fitchburg, Lowell and Hyannis in 1894, that is, as of those dates they were established as normal schools. By St. 1932, c. 127, § 1, the designation of State normal schools was changed to State teachers colleges. The plaintiff Marie Lynch matriculated at the teachers college at Framingham prior to the opening of the school year on September 13, 1943. She was informed by its president that she would be required to pay an annual fee of $75, payable one half on or before September 15, 1943, and the remaining half on or before February 1, 1944, and that, in accordance with the further direction of the department of education, unless these payments were made she could not continue in the college. The president of the college also informed her that during the college year she would be expected to equip herself with the necessary books and school supplies, which would cost approximately $35, as set forth in a bulletin of information entitled "expenses." No fee is payable to the college for such books and school supplies,

there being no requirement of the department of education to that effect. The plaintiffs made no payment of the tuition fee and under a stipulation none is to be required of them pending the determination of this suit.

Prior to 1919 the sole and exclusive charge of the institutions here involved was exercised by the board of education created in 1837 (St. 1837, c. 241). By St. 1919, c. 350, §§ 56–58, the board of education was abolished and its powers and duties were transferred to the department of education created by said c. 350. See now G. L. (Ter. Ed.) c. 15, § 1. That section provides as follows: "There shall be a department of education, in this chapter called the department, which shall be under the supervision and control of a commissioner of education, in this chapter called the commissioner, and an advisory board of education of six members, in sections one to six, inclusive, called the board, of whom at least two shall be women and one shall be a school teacher of the commonwealth." The specific provisions relative to the power of the department of education with respect to the State teachers colleges is now embodied in G. L. (Ter. Ed.) c. 73, § 1, as amended by St. 1932, c. 127, § 10, which reads as follows: "The department of education, in this chapter called the department, shall have general management of the state teachers colleges at Barnstable, Bridgewater, Fitchburg, Framingham, Lowell, North Adams, Salem, Westfield and Worcester, and the Massachusetts school of art at Boston, wherever said colleges may be hereafter located, and of any other state teachers colleges hereafter established, and of boarding houses connected therewith, and may direct the expenditure of money appropriated for their maintenance." In 1902, by Res. 65 (now G. L. [Ter. Ed.] c. 73, § 6) authority was given the department of education to receive as pupils in the State normal schools nonresidents of Massachusetts upon payment of tuition fees. These institutions were conducted without charge for tuition or school supplies, including books, to residents of Massachusetts until September 1, 1925. The entire cost of tuition, books and school supplies for the pupils was borne by the Commonwealth for the purpose of pro-

curing young men and women to receive training which might fit them to teach in the public schools of Massachusetts. The Commonwealth has annually made appropriations for the maintenance of these institutions, such annual appropriations totaling over a million dollars. In addition the Commonwealth has appropriated annually not less than $4,000 and not over $10,000 to aid needy students to pay living expenses.

On September 1, 1925, the department of education voted to charge a fee of $10 to each student in the State teachers college. In 1928 this fee was increased to $20, in 1932 to $50, in 1939 to $70, and in 1941 to $75. This fee of $75 was the amount the plaintiff Marie was asked to pay in two instalments (one on her matriculation) as a condition of receiving tuition at the Framingham teachers college, and is the sum that the defendants claim she was required to pay for tuition. The sums collected from students both resident and non-resident as tuition have been paid into the treasury of the Commonwealth by the department of education and became part of the general revenues. The total of such sums from 1925 to 1942, inclusive, amounted to $2,160,108.60 and the receipt by the department of sums as tuition was set forth in the annual reports to the Legislature by the commission on administration and finance as provided by G. L. (Ter. Ed.) c. 7, § 33. Prior to 1932 books and similar necessary school supplies had been furnished free to the pupils. In 1932 the department of education voted to discontinue furnishing books and supplies to the students who "may buy them when and where they choose."

There is nothing in the contention of the plaintiffs that the Constitution of the Commonwealth provides for free education not only in common schools but also in higher institutions of learning such as teachers colleges. Part II, c. 5, § 2, of the Constitution dealing with "The Encouragement of Literature, etc." imposes upon the Legislature the duty of spreading "the opportunities and advantages of education in the various parts of the country, and among the different orders of the people . . . [and of cherishing] the interests of literature and the sciences, and all semi-

naries of them . . .." Articles of Amendment 18 and 46 deal with the expenditure of moneys for the support of "common schools." No provision is to be found in the Constitution with respect to free education in the higher institutions of learning. "Common schools" or "public schools" embrace only the grade schools and high schools. These terms "are never applied to the higher seminaries of learning, such as incorporated academies and colleges." *Merrick* v. *Amherst*, 12 Allen, 500, 508–509. In *Jenkins* v. *Andover*, 103 Mass. 94, 98, the court, quoting *Cushing* v. *Newburyport*, 10 Met. 508, 511, said: "The establishment of schools for the education, to some extent at least, of all the children of the whole people, is not the result of any recent enactment; it is not the growth even of our present constitutional government, or the provincial government which preceded it, but extends back two hundred years, to the early settlement of the colony. Indeed, the establishment of popular schools is understood to have been one of the objects for which powers were conferred on certain associations of persons living together in townships, enabling them to regulate and manage certain prudential concerns in which they had a common interest." And in the *Jenkins* case, the court referring to the Constitution of the Commonwealth, Part II, c. 5, § 2, requiring "the legislature and the magistrates, among other things, to 'cherish' 'public schools and grammar schools in the towns'" said, "'Public schools,' as those words are used in the Constitution and laws of Massachusetts, are not limited to schools of the lowest grade. . . . In the general laws of the Commonwealth, for years before the adoption of the eighteenth amendment of the Constitution, the words 'public schools' were used as including all schools, from those lower than grammar schools to those commonly known as high schools, established and maintained in the several cities and towns as part of the general system of popular education. . . . The words 'public schools' are synonymous with 'common schools,' in the broadest sense, as used in this constitutional amendment, and in the statutes concerning the board of education and the distributions of the school fund."

(Pages 97–98.)  In *Opinion of the Justices*, 214 Mass. 599, 601, it was said, "Article 18 of the Amendments to the Constitution was adopted because of a deep seated conviction of the imperative necessity of preserving the public school system in its integrity and of guarding it from attack or change by explicit mandate.  Public schools never have been understood to include higher institutions of learning like colleges and universities."  In *Kayser v. St. Louis Board of Education*, 273 Mo. 643, 657, it was held that a teachers college is not a public school in the sense of a grade or high school in spite of the fact that it is supported by public funds.  In *Gordon v. Cornes*, 47 N. Y. 608, 616, in the discussion of normal schools, it was pointed out that those who were received therein were "under no obligation to become teachers, and there is nothing to prevent their engaging in other pursuits."  See also *People v. Crissey*, 45 Hun, 19, 21; *Board of Regents for Normal School District No. 3 v. Painter*, 102 Mo. 464, 471; *State Female Normal School v. Auditors*, 79 Va. 233, 239; *State v. Regents of the University of Wisconsin*, 54 Wis. 159, 162.  That is true as to students in our State teachers colleges.  There is nothing in the Constitution of the Commonwealth which would preclude the Legislature from enacting a statute providing for the creation of teachers colleges, to be supported in part by the payment of fees for tuition.  We discover no provision of the Constitution or of statute which requires the Commonwealth to furnish free education in State teachers colleges.

The plaintiffs, however, contend that if the Legislature has the power to establish fees for tuition in State teachers colleges it has not done so, and that if it has such power it may not delegate it to the department of education and in any event has not attempted to do so.

The administration of the State teachers colleges is governed by G. L. (Ter. Ed.) c. 73, §§ 1–6, as amended by St. 1932, c. 127, §§ 10–16.  Section 1 provides that "the department of education . . . shall have general management of the state teachers colleges . . . wherever said colleges may be hereafter located, and of any other state teachers

colleges hereafter established, and of boarding houses connected therewith, and may direct the expenditure of money appropriated for their maintenance." Section 6 reads: "Upon payment of tuition fees the department may receive students not residents of the commonwealth in state teachers colleges." The broad powers of general management of these colleges conferred upon the department of education, include in our opinion the right to set up admission requirements, scholastic standards, limit of attendance and general administration except as thus modified in the case of non-resident students. As a practical matter the supervision and general management of these colleges were placed in the hands of a specialized department. Under this grant of general management we think that the Legislature intended to confer on the department of education authority to establish reasonable tuition fees in the cases of students who are residents of the Commonwealth. Had the Legislature intended that the State teachers colleges should be supported entirely by public funds, we think that a provision to that effect would have been inserted in the statute. See *State Teachers' College* v. *Morris*, 165 Miss. 758, 771–772. It is to be assumed that, in enacting the statute creating the State teachers colleges which makes no provision for free education therein, the Legislature was aware of the language of the Constitution requiring the maintenance of free education in the common schools, grade schools and high schools. The silence of the Legislature as to the payment of tuition fees in State teachers colleges by students who are residents of the Commonwealth cannot be construed properly as a prohibition thereof or as an extension of the requirements of free education in common schools. The authority to deal with the subject matter was left in the hands of those best qualified to do so by reason of intimate knowledge of the details of administration, "general management" of which was conferred upon them with an understanding that from time to time changing conditions might make changes of policy necessary or proper. "Statutes framed in general terms commonly look to the future and may include conditions as they arise from time to time

not even known at the time of enactment, provided they are fairly within the sweep and the meaning of the words and fall within their obvious scope and purpose." *Commonwealth* v. *Welosky*, 276 Mass. 398, 403. *Commonwealth* v. *Tilley*, 306 Mass. 412, 415. And it is well established that when a general power is given all authority necessarily incidental to carry out the power is given by implication. *Fluet* v. *McCabe*, 299 Mass. 173, 178. The word management may be defined as conduct, administration, guidance, control, judicious use of means to accomplish an end. The words general management are sufficiently comprehensive to convey to the mind a legislative intent to confer upon the department of education authority to deal with the conduct of the State teachers colleges in all of the details of their control and administration. See *Stagway* v. *Riker*, 55 Vroom, 201, 202–203. The implied authority conferred by the Legislature upon the department of education to make tuition charges to residents of the Commonwealth is not an unconstitutional delegation of legislative power. While it is true that the Legislature itself might have made express provision for such charges, practical considerations, such as the fact that from time to time the amount of such fees might vary to meet changing circumstances, as the department of education deemed that they did in the present case, would seem to make it expedient and desirable that the subject matter be left to the department under the grant of the power of general management. See *Dow* v. *Wakefield*, 103 Mass. 267, 273; *Kingman, petitioner*, 153 Mass. 566, 576. It is settled that the Legislature "may delegate to a board or an individual officer the working out of the details of a policy adopted by the Legislature." *Commonwealth* v. *Hudson*, 315 Mass. 335, 341.

In the present case, moreover, the Legislature must be taken to have ratified by acquiescence the policy of the department of education in requiring the payment of tuition fees by students who are residents of the Commonwealth. For eighteen years tuition fees have been required to be paid by them in amounts increased from time to time. See *Campbell* v. *Kenosha*, 5 Wall. 194, 203–204; *Mattingly* v.

*District of Columbia,* 97 U. S. 687, 690–691; *Robia Holding Corp.* v. *Walker,* 257 N. Y. 431, 436–437; *State* v. *Milwaukee,* 150 Wis. 616, 619–620. During that period in each year the Legislature was apprised of this policy by the report submitted by the chairman of the ways and means committee and the annual report of the department of education. In 1925 in its annual report the department of education announced that it had established a fee for all students and had increased the fee for nonresident students. Public Document (1925) No. 2, page 7. Its action was reported by the house chairman of the ways and means committee. House Document (1926) No. 1125, page 3. In the budget recommendations to the General Court of 1927 the then Governor announced that the department of education had established a registration fee for all students in the normal schools. House Document (1927) No. 1000, page 9. In 1934 (Senate Document No. 250, pages 20, 21) the special commission on public expenditures recommended a further increase from $50 to $100 in the tuition fee for students of the State teachers colleges, who were residents of Massachusetts, stating their belief that the increases might best be brought about by action of the department of education and the trustees of the State colleges, rather than by act of the Legislature unless such a course should become necessary. From 1925 to 1942, inclusive, there was paid into the treasury from that source a total of $2,160,108.60 which became a part of the general revenues. The receipts from that source were set forth in the annual reports to the Legislature by the commission on administration and finance, and were dealt with by the Legislature as a part of the general revenue. These receipts were an important element in the determination by the Legislature of the amounts necessary to be raised by taxation generally to meet the appropriations made by the Legislature for the conduct of the affairs of the Commonwealth. The legislative concurrence in the practice of the department of education in the matter of tuition charges may be considered properly as an indication of the legislative interpretation of the statute whereunder the general management of the State teachers

colleges was conferred upon that department. *Burrage* v. *County of Bristol*, 210 Mass. 299, 301. *Tyler* v. *Treasurer & Receiver General*, 226 Mass. 306, 310, and cases cited. *Scott* v. *Commissioner of Civil Service*, 272 Mass. 237. *State Teachers' College* v. *Morris*, 165 Miss. 758, was an action by the plaintiff, a State owned and supported college, to recover $72 for the tuition of a student. Payment was resisted on the ground that the college was a part of the uniform system of free public schools under § 201 of the Constitution of the State of Mississippi, which provided for the establishment of a uniform system of free public schools. Just as in the present case the plaintiff college was the successor of a State normal school and the court held that the State officers charged with the duty of administering the affairs of the State's university and colleges were not prohibited by the Constitution "from charging their students with such fees and tuition . . .." It does not appear that any statute of the State of Mississippi specifically authorized such fees, but the court laid stress upon the fact that over a long period of years the Legislature and the State officers in charge of such institutions had uniformly construed the second clause of § 208 of the Constitution as not prohibiting such fees and tuition (page 771).

The plaintiffs have stressed the action of the Legislature in providing that nonresident students may be received in the State teachers colleges upon payment of tuition fees, arguing that the silence of the statute with respect to the payment of such fees by students who are residents of the Commonwealth indicates that the Legislature did not contemplate payment of tuition fees by such residents and did not intend to confer upon the department of education the power to require such payments. General Laws (Ter. Ed.) c. 73, § 6, had its origin in Res. 1902, c. 65. At that time no charges were being made to resident students in what are now State teachers colleges. The resolve was enacted to permit the reception of nonresidents from other States and foreign countries in the State normal schools (now State teachers colleges) upon payment of a tuition fee, the amount of which was impliedly left to be determined by the depart-

ment, and to make this a compulsory requirement. In our opinion this statute is not susceptible of an interpretation that the then policy of the department under which no tuition fees were required to be paid by students who were residents of Massachusetts was fixed beyond the power of the department to alter because no specific provisions of statute authorized a different policy — a different policy in fact later adopted by the department in its discretion and ratified in effect by the Legislature, as before observed. What we have already said applies also to the matter of books and supplies.

The order for final decree entered in the court below is reversed and a final decree is to be entered dismissing the bill.

*So ordered.*