MUELLER and others, Appellants, vs. EAU CLAIRE COUNTY and others, Respondents.

*November 16 — December 7, 1900.*

(1) *County insane asylum: Letting of contracts: Lowest bidder: Discretion.* (2) *Injunction against illegal contract: Action by taxpayer: Individual interest.* (3) *Building contract: Alterations.*

1. Under secs. 603, 604, Stats. 1898 (providing that upon the adoption of plans for buildings for a county insane asylum by the county board, that body may "proceed to contract for the construction of said buildings, with the lowest bidder or bidders, for all the work and material required therefor"), no discretion is vested in the county board to award the contract to the person whose bid, in their judgment, is the most advantageous to the county, but they must let the contract to the person who has offered to do the work for the least money.

2. A taxpayer may maintain an action to restrain a county from carrying out an illegal contract which will cast a burden of debt on the county, whether his individual loss will be great or small.

3. The insertion, in a contract for the construction of a county insane asylum, of a clause (usually put in building contracts) permitting the building committee to require alterations, additions, or omissions from the work specified without avoiding the contract, is not an evasion of the statute (sec. 604, Stats. 1898) declaring that the county board shall prepare "complete" plans and specifications for the work. Such a clause permits only the making of such changes as will not substantially alter the character of the building or increase its cost to an unreasonable amount.

APPEAL from an order of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The plaintiffs *Stockwell* and *Van Hovenberg* are residents and taxpayers of the county of *Eau Claire,* and bring this action on behalf of themselves and other taxpayers. They join with them *L. J. Mueller,* who was the lowest bidder for the work hereinafter mentioned, but is admitted not to be a necessary party. The defendants are *Eau Claire County,* *W. H. Hobbs,* the contractor, and certain members of the county board of supervisors, who had charge of the erection of a county asylum for the chronic insane.

The complaint sets out that the county had decided to erect a building for that purpose; the appointment of the committee, who had secured plans and specifications for the building and another set for the heating apparatus to be used therein; the advertisement for bids for the erection of the building and for separate bids for the heating plant. It then details the requirements of the notice for bids, and compliance therewith by the plaintiff *Mueller;* that the contract for the erection of the building was awarded to one Long; that plaintiff *Mueller* offered to put in the heating plant for $6,172, which was the lowest bid. He notified the committee of his readiness to enter into a contract and furnish the required bond, but the committee rejected his bid and accepted the bid of the defendant *Hobbs,* whose bid was $6,175, and entered into a written contract with him. The complaint further states that the acts of defendants were attempted to be performed under secs. 603, 604, Stats. 1898, and that the letting of the contract to *Hobbs* was in violation of sec. 604; that their rejection of *Mueller's* bid was without any cause or reason, except that the committee desired to favor *Hobbs* and give him an unlawful preference, and that the defendants threatened to carry out such unlawful contract. A temporary and permanent injunction was prayed for.

To this complaint the defendants made answer which substantially admits the allegations of the complaint with reference to the erection of the building, reception of bids, and letting of contracts.  It then sets out the bids of *Mueller* and *Hobbs*, and as a reason for accepting the bid of the latter it alleges, in substance, as follows: *Mueller* lived at Milwaukee, 250 miles from Eau Claire.  He was wholly unknown to the committee.  *Hobbs* was a resident of Eau Claire, and well known to the committee, and for many years had been engaged in doing similar work, and was known to be responsible and of ability to perform such work.  The committee believed it was probable that, as the work progressed, changes might be necessary in some of the details of the work, and that such matters could be more easily arranged with a contractor who was close to the place of the work, and who, it was supposed, would give his personal attention to it.  The committee further realized the fact that an act of incompetency or unfaithfulness in the performance of the work might bring losses to the county, "which in comparison would dwarf into absolute insignificance (if it is not already so) the sum complained of; " that in jobs of this kind defects were likely to occur which might not be discovered as the work progressed, or until the plant was in active use, and which could be more readily remedied by a contractor near at home; that in case of repairs they could be more readily and cheaply obtained from the person who constructed the work.  Reference was made to certain provisions of the contract to the effect that the drawings, plans, and specifications were intended to co-operate, and that work mentioned in one and not in the other was to be executed as though mentioned in both, without extra charge.  Questions would constantly arise with reference to such matters which made it essential that the contractor should be on the ground so they could be arranged as the work progressed, and the committee believed better and more satisfactory results could be obtained

in the adjustment of such matters with the defendant *Hobbs,* by reason of their knowledge of his business methods, than could be obtained from *Mueller,* whom they did not know. The answer then alleged that the other plaintiffs were only assessed to the amount of $400 in property in the county, and that the additional tax they would be required to pay would be only the fractional part of a mill; that *Hobbs* had paid to the county treasurer the sum of $3 to be applied on the contract.

To this answer the plaintiffs demurred on the ground that it did not state facts sufficient to constitute a defense. On the hearing it was urged that the complaint did not state a cause of action. The court so found, and sustained the de-murrer to the complaint. From the order so entered the plaintiffs have taken this appeal.

For the appellants there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.* They argued, among other things, that laws requiring public contracts to be let to the lowest bidder are binding, and will be strictly enforced by the court. All contracts awarded in violation of such laws are illegal and void, and persons performing work thereunder are entitled to no compensation therefor. *Mitch-ell v. Milwaukee,* 18 Wis. 92; *Wells v. Burnham,* 20 Wis. 112; *Ricketson v. Milwaukee,* 105 Wis. 591–604; *Brady v. New York,* 20 N. Y. 312; *People ex rel. Coughlin v. Gleason,* 121 N. Y. 631; Tiedeman, Mun. Corp. § 172; 1 Dillon, Mun. Corp. § 466; *Addis v. Pittsburgh,* 85 Pa. St. 379; *Richard-son v. Grant Co.* 27 Fed. Rep. 495; *Murphy v. Napa Co.* 10 Cal. 497; *Heidelberg v. St. Francois Co.* 100 Mo. 69; *Townsend v. Holt Co.* 40 Neb. 852; 15 Am. & Eng. Ency. of Law (1st ed.), 1091, and cases cited. When bids are advertised for and are filed in compliance with the advertisement, their merits both actual and relative must be determined solely by a consideration of the terms and conditions set forth in the advertisement or other public notice, and

an award on other grounds and considerations will be invalid. Tiedeman, Mun. Corp. § 173; *Shaw v. Trenton*, 49 N. J. Law, 339; *Mazet v. Pittsburgh*, 137 Pa. St. 548.

*DeAlton S. Thomas*, district attorney, and *W. F. Bailey*, attorney for *Hobbs*, for the respondents, contended, *inter alia*, that where the injury is so trifling as in this case a court of equity will not interfere. Anderson, Law Dict. 615; *Campbell v. Mellen*, 61 Wis. 612; *Randall v. Dailey*, 66 Wis. 285; *Kelley v. Corson*, 8 Wis. 182; *Payne v. Jelleff*, 67 Wis. 246; *Smith v. Bowen*, 61 Wis. 258; *In re Thurston*, 57 Wis. 104; *Meggett v. Eau Claire*, 81 Wis. 326; *Kelly v. Chicago*, 62 Ill. 279. Equity will not interfere in such a case as this where it is evident that there was no bad faith and it appears that the accepted bid is really the lowest and most advantageous. A reasonable discretion is vested in the county board to determine these things. *People ex rel. Belden v. Contracting Board*, 27 N. Y. 378; *East River G. L. Co. v. Donnelly*, 93 N. Y. 557; *Kelly v. Chicago*, 62 Ill. 283.

BARDEEN, J. The defendant county was proceeding to erect its asylum under and by virtue of the authority conferred upon it by secs. 603, 604, Stats. 1898. Sec. 604 provides that, before proceeding to the construction of such buildings, the county shall prepare plans and specifications thereof, which shall be submitted to, and approved by, the board of control. After such approval, the county board may adopt the same "and proceed to contract for the construction of said buildings with the *lowest bidder or bidders* for all the work and material required therefor." The complaint alleges and the answer admits that, with reference to the heating plant for said asylum, the plaintiff *Mueller* was the lowest bidder, and that the county had let the contract therefor to the defendant *Hobbs*, whose bid was $3 in excess of *Mueller's*. One reason urged by the defendants in justification of their acts is that the law vested the committee

with a discretion in the matter, and that they had a right to determine which bid was most advantageous to the county, and that the courts have no right to question the reasonable exercise of that discretion. Undoubtedly, if their premise is correct, the rule suggested is the law of the land. When the powers conferred necessarily involve the exercise of discretion, the courts will not question its exercise except for an abuse equivalent to fraud. *People ex rel. Belden v. Contracting Board,* 27 N. Y. 378. See *East River G. L. Co. v. Donnelly,* 93 N. Y. 557. Many cases might be cited to this proposition. But does the statute invest the county authorities with the exercise of discretion? It says the board may adopt plans and " proceed to contract for the construction of said buildings with the lowest bidder or bidders for all the work and material required therefor." The language is plain, simple, and easily understood. It is not open to construction. The duty of the board is ministerial and not judicial. It requires no exercise of judgment or discretion to determine which is the lowest bid. It is a mere matter of computation. The law says they may contract with the lowest bidder. Not with the bidder whose bid, in their judgment, is the most advantageous to the county, but with the person who will bid to do the work for the least money. The situation is entirely unlike the cases cited by defendants, where the authority conferred was to let the contract to the lowest bidder "giving adequate security," or to the "lowest responsible bidder." In such cases the courts very properly hold that the power conferred implies the exercise of discretion, which will not be interfered with. In this case, however, the statute invests the board with a public duty, and points out the manner of its exercise. It can be legally exercised in no other way. The importance of strict adherence to, and literal compliance with, the mandates of the statute conferring the authority has been announced and reiterated by this court in no uncertain terms. It is entirely

unnecessary to repeat what has been said, and we will content ourselves with reference to the cases. *Wells v. Burnham*, 20 Wis. 112; *Ricketson v. Milwaukee*, 105 Wis. 591.

It will be observed that one of the reasons given for the strict enforcement of this rule is the prevention of favoritism and arbitrary action on the part of municipal authorities. This case affords a fair example of the dangers to be encountered by any relaxation from the strictness of this rule. *Mueller* had gone to the trouble and expense of traveling from Milwaukee to Eau Claire; had no doubt spent some time in examining the plans; had submitted his bid and made his deposit, as required, assuming, as he had a right to, that the lowest bidder would receive the contract. Within the principle stated, he was clearly entitled to the contract, his bid being the lowest. But the committee thought otherwise. They believed, honestly no doubt, that they might survey the whole situation and accept the bid that was most to the advantage of the county. As they have set out in their answer, they believed that exigencies might arise when it would be more convenient for them and cheaper for the county to deal with a contractor who lived in their midst and with whose business methods they were familiar. The difference in the bids was but a trifle, and the loss to the county might be made up many times, during the progress of the work, by having the contractor at hand. This contention is specious, but fatal to open bidding and destructive of the very purpose of the statute. It opens the door to favoritism, stifles competition in bidding, and leads to abuses without limit. It makes no difference that the amount involved is small or that the injury to the county is insignificant. The moment you depart from the line which has been blazed, you strike a very wilderness. Each municipal body would become a law unto itself. Consideration of local pride, arguments of convenience, friendship to bidders, all would unite to the prejudice

of one and the benefit of another. A committee without any rudder but its own sweet will, or, as argued here, its reasonable discretion in such matters, might be guilty of many abuses, and yet find justification on the very grounds set up in the answer in this case. But the superlative objection may be found in its influence upon the bidding. If the considerations suggested were allowed to prevail, outside bidders would find little encouragement to compete against local contractors, and the scheme of competition by bidding would be reduced to the level of mere negotiation. We therefore have no hesitancy in saying that the answer presents no sufficient defense.

The next question suggested is that, under the facts presented, the plaintiffs are not entitled to maintain this action. The presence of the contractor *Mueller* neither adds to nor detracts from the rights of his coplaintiffs. They sue as taxpayers to redress their own wrongs and those of the public. The fact that their ultimate pecuniary loss may be almost infinitesimal is not controlling. Their right to sue is not based alone upon a direct loss to them in the ultimate winding up of the transaction attacked. It rests rather upon the fact that an illegal contract has been entered into which will require a large amount of the taxpayers' money to satisfy. In other words, a debt has been created without warrant of law, and the money of the taxpayer is about to be used for its liquidation. Every taxpayer, great or small, has an interest in the disposition of county funds. Courts will not stop to balance differences or enter into computations to ascertain just how much the taxpayer will be likely to suffer, and then grant or deny relief according as they find his loss will be great or small. The principle stated in the recent case of *Kyes v. St. Croix Co.*, *ante*, p. 136, is applicable to, and governing in, this case; or, as is said in another case: "The private person so suing must show something more than a mere speculative or threatened

wrong or illegal act. He must show an active or threatened invasion or destruction of a distinct right belonging to himself or to the body of citizens for whom he sues." *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493. When this is shown, and it appears that a burden of debt is about to be illegally cast upon the county, the taxpayer's right to sue is recognized, and the court will not stop to inquire whether his individual loss is great or small. In contemplation of a court of equity, the loss to the county would be the entire amount of the contract price to be paid on the illegal contract, and not the difference between the valid and void contracts. If courts should stop to balance up such differences, cases would multiply without end, and each court would be a law unto itself.

A clause in the contract provides that, "Should said committee, at any time during the progress of the work of said heating plant, require any alteration, addition, or omission from the work specified, the same shall be done, and shall not affect or avoid this contract, and will be added to, or deducted from, the contract price, as may be, by a fair and reasonable valuation." Upon this the plaintiffs attempt to found an argument that it is an evasion of the statute, which says that the board shall prepare *complete* plans and specifications for the work. This "smacks of overrefinement." It is the clause usually put in building contracts to enable the owner to make changes, correct mistakes, or cause additions or omissions in order to make the building more truly conform to its intended use. It must be construed reasonably, and, so construed, would, of course, limit the changes to such as would not substantially alter the character of the building or increase its cost to an unreasonable amount. See *Kretschmar v. Bruss, post*, p. 396.

*By the Court.*— The order appealed from is reversed, and the cause is remanded with directions to sustain the demurrer to the answer, and for further proceedings according to law.