Victora and others, Appellants, vs. Village of Muscoda and others, Respondents.

*April 11—June 25, 1938.*

For the appellants there were briefs by *Sanborn, Blake & Aberg* of Madison, *Carthew & Meyer* of Lancaster, and *Edwin Conrad* of Madison, and oral argument by *Mr. Chauncey E. Blake* and *Mr. Conrad.*

For the respondents there were briefs by *Otto F. Christenson* of Lancaster and *Poppenhusen, Johnston, Thompson & Raymond* of Chicago, Illinois, attorneys, and *Anan Raymond* of Chicago, Illinois, of counsel, and oral argument by *Mr. Raymond* and *Mr. Christenson.*

The following opinion was filed May 17, 1938:

FAIRCHILD, J. Certain taxpayers of the village of Muscoda complain that the village officers have attempted to enter into a contract for the purchase of a Diesel-engine gen-

erating plant without complying with the provisions of sec. 61.55, Stats., which provides:

"All contracts for the performance of any work or the purchase of any materials, in any such village, exceeding five hundred dollars, shall be let by the village board to the lowest bidder in such manner as they may prescribe."

For several years the village had been engaged in the power business. The demand for power having increased, it became necessary either to purchase supplementary power or to acquire additional generating capacity. Since the village citizens had already approved of the entry into the power business, we are of the opinion that the controlling question is whether the contract falls within the bidding statute.

It appears without dispute that the only proposal considered by the village board was that of Fairbanks, Morse & Company. The defendants contend that it was unnecessary to call for bids, because sec. 61.55 is a restriction on the general power of a village to contract, and should therefore be limited in its application, and should not be applied to any contract which by any reasonable intendment is not strictly within the limits of the statutory definition.

This section was before the court in *Kilvington v. Superior* (1892), 83 Wis. 222, 228, 53 N. W. 487, in which the court upheld a contract involving the use of a patented process, where the village had purchased the patent rights without calling for bids, but had let the actual construction work to the lowest bidder, as required by the statute. This court said:

"The city had the benefit of all the competition of which the nature of the work admitted; and in such cases, where the entire work is done at the general expense of the city, the statute ought not to be so construed as to exclude the city from availing itself of desirable patented works or im-

provements, as to which there is but one price, and for which there can, in the nature of the case, be no competition, and when, for performing the work and furnishing materials, the advantage of competition is secured. . . ."

This decision establishes an exception to the bidding requirement in the case of a village desiring to purchase a patented right which can be obtained only from one seller, but at the same time it clearly indicates that the bidding statute must be followed if the subject of the contract is offered by more than one seller, so that competitive bidding is possible. We must therefore determine whether the subject matter of the present contract was an exclusive or patented article, or was, on the other hand, a product which was offered for sale by several sellers, so that the village might have had the benefit of competitive bidding.

Both defendants admit the truth of the following allegation of the complaint:

"That on or about the 25th day of March, 1937, the defendant . . . executed on behalf of said village a contract . . . in and by which contract the defendant, Fairbanks, Morse & Company undertook and agreed to fabricate and deliver a 150 H. P. 121 KVA. 97 KW full Diesel-engine generating set and auxiliaries, to superintend its erection in the village, test the same and do all work requiring skilled labor, and instruct the village's operators in the operation, care and management of such machinery. . . ."

It appears from this allegation of the complaint that the subject matter of the contract was the fabrication of a 150 H. P. 97 KW full Diesel-engine generating set and auxiliaries. If this was a competitive article, bidding was required. The plaintiffs put in evidence a Diesel-engine directory, taken from a trade publication, in which there were listed a large number of manufacturers of Diesel engines. An engineer who was called as an expert witness testified that more than thirty manufacturers could have supplied an engine of the

size needed by the village. This testimony having remained uncontradicted, the record permits of but one inference, namely, that the village could have obtained competitive bids if it had advertised in accordance with statute.

Sec. 61.55 applies to "the performance of any work or the purchase of any materials." It was argued that the fabrication and delivery of a Diesel-engine power plant is neither the performance of work nor the purchase of materials, but, in view of the purpose of the bidding statute, we think that such a construction of its language is entirely too narrow.

In *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 93, 99 N. W. 603, this court construed a charter provision which required competitive bidding on "all contracts for work ordered by the common council of said city." It was argued that this language should be limited in meaning to apply only to the letting of contracts for construction work to be done by unskilled labor. But the court ruled that the erection of a bridge came within the meaning of the charter, saying:

"One of the most familiar rules for judicial construction would require the word 'work' as thus used to include the products of work other than mere merchandise, if there were any ambiguity in respect thereto calling for judicial construction, which is doubtful. . . . There is no better safeguard against infidelity of officials in that respect, yet discovered, than to require municipal contracts to be publicly let, the scope of the service to be performed and the terms of payment being so definitely mapped out in advance as to enable persons experienced in respect thereto to estimate with reasonable certainty the actual cost thereof, and to require the award to be made without change in such service or terms. . . ."

Some courts have ruled that the bidding requirement does not apply to the purchase of standardized equipment, such as fire engines or road graders, which may be purchased as finished articles. Because there is an established price for

such articles, there is little chance for favoritism. Without deciding whether such an exception exists in the law of this state, we think it clear that a municipal electric plant is not in the same class with fire engines and road graders. The contract shows that the transaction involved the selection and assembly of many parts. The fact that the manufacturer was given two months' time in which to make delivery gives rise to the inference that the contract was not for the delivery of a finished article to be taken from stock. The contract speaks repeatedly of "machinery and materials," and of "materials and workmanship." It was a contract for work to be performed.

We have been influenced by a decision of the Michigan court, *Attorney General ex rel. Allis-Chalmers Co. v. Public Lighting Comm.* (1908) 155 Mich. 207, 118 N. W. 935. That court determined that a contract for the purchase of a steam-turbine generating plant must be let in the usual way to the lowest responsible bidder. It was argued that the charter provision which required bidding had no proper application in the case of machinery, materials, or property of which the seller had a monopoly, especially when the authorities were convinced that a particular article was the best obtainable. The court said that the record did not show a monopoly and that the court would not open the door to all the undesirable results which the legislature intended to prevent.

A fair reading of the statute, mindful of the evils against which it is directed, leads to the conclusion that the legislature intended to require open bidding whenever the work to be contracted for is in its nature competitive. The purpose of the law is to protect the public against unwise and injudicious contracts resulting from favoritism and dishonesty, and to secure the performance of public work upon the best terms and at the lowest possible cost. The evidence

leaves no doubt that competitive bids could have been secured by the village. We conclude that performance of the contract must be enjoined.

Although the village utility may act in a proprietary capacity when it sells power, the relation between the village and its officers is governmental even when the officers are performing duties which relate to the management of the utility. In the performance of those duties, the officers are subject to the general law which governs the conduct of village affairs.

The construction, acquisition, or leasing of a village utility plant, under secs. 66.06 and 197.01, Stats., must be conducted according to the provisions there set forth. Where a referendum is required, the need of competitive bidding disappears because the people are fully advised. But where, as in the present case, a village has already entered the utility field, secs. 66.06 and 197.01 do not prevent the application of sec. 61.55 to contracts for the performance of work or purchase of materials, which are then but the carrying on of the daily business of the village.

At the conclusion of the respondents' brief the question is raised whether the plaintiffs have a right to maintain this suit. It is claimed that the plaintiff taxpayers have shown no such injury either accomplished or prospective as to furnish them a ground for complaint. This question is controlled by such cases as *Mueller v. Eau Claire County* (1900), 108 Wis. 304, 84 N. W. 430; *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603; *Income Tax Cases* (1912), 148 Wis. 456, 500, 134 N. W. 673, 135 N. W. 164. In the *Income Tax Cases* the court said:

"The philosophy of the taxpayer's action in the circuit court is that the taxpayer is a member of a municipal corporation, who, by virtue of his contributions to the funds of the municipality, has an interest in its funds and property of

the same general quality as the interest of a stockholder in the funds of a business corporation, and hence when corporate officers are about to illegally use or squander its funds or property he may appeal to a court of equity on behalf of himself and his fellow stockholders (*i. e.,* taxpayers) to conserve and protect the corporate interests and property from spoliation by its own officers."

If the money of a village is about to be disbursed under a contract made in violation of law, it necessarily follows that it is to be paid out for an unlawful purpose, and the transaction may be enjoined by a taxpayer suing on behalf of himself and others similarly situated.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant relief to the plaintiffs in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on June 25, 1938.