Action commenced on June 19, 1946, by Samuel Roberts as a taxpayer and water user, to restrain the city of Madison from issuing $2,000,000 Water Works Mortgage Revenue Bonds. Defendant demurred to the complaint. The trial court sustained the demurrer on the ground that the plaintiff could not maintain this action as a taxpayer or a water user. Plaintiff appeals.
On August 24, 1945, the city of Madison adopted an ordinance providing for the issuance of $2,000,000 Water Works Mortgage Revenue Bonds. These bonds were to be issued for the following purposes: (1) To reimburse the city of Madison for money previously expended from its general fund *Page 319 
and from the proceeds of its general-obligation tax bonds for the acquisition, construction, extension, improvement, and operation of its waterworks system to the extent of $1,647,000;
(2) To retire and refund its outstanding waterworks refunding bonds dated September 1, 1938, in the principal amount of $90,000; and
(3) To pay the cost contemplated for additions, improvements, and extensions of said system in the amount of $263,000.
On September 7, 1945, the common council of the city of Madison adopted a resolution directing the city clerk to advertise for sealed bids for the purchase of $1,737,000 waterworks mortgage-revenue bonds and to sell such bonds subject to the approving opinion of Messrs. Chapman Cutler, bond attorneys. The city clerk refused to comply with the resolution. The city of Madison proceeded by an alternative writ of mandamus
to compel the city clerk to both advertise and execute the bonds. That action reached this court and is reported inState ex rel. Madison v. Bareis (1946), 248 Wis. 387,21 N.W.2d 721.
On June 14, 1946, the common council of the city of Madison directed the city clerk to advertise the bonds for sale and directed the city clerk to complete and execute the bonds. No tax was levied to support this issue of bonds, which were exclusively mortgage-revenue bonds issued pursuant to sec. 66.06 (9) (b) 13, Stats. 1945. The plaintiff brought this action to enjoin the issue of the bonds on the ground that the section of the statutes under which they were issued is unconstitutional.
Plaintiff is a taxpayer and water user in the city of Madison and as such has a right to bring this action. *Page 320 
The city of Madison is about to spend $2,400 for the preparation of bonds which the plaintiff claims are illegal. As the stockholder in a private corporation has the right to interfere to protect the corporate funds from illegal acts, so the taxpayer in a municipal corporation has the right to enjoin the misapplication of public funds. 52 Am. Jur., Taxpayers' Actions, p. 4, sec. 4; Victora v. Muscoda (1938), 228 Wis. 455,279 N.W. 663. Taxpayers' suits have often been brought, as here, to enjoin the issuance of bonds claimed to be unlawful. 52 Am. Jur. p. 8, sec. 12; Anno. 36 L.R.A. (N.S.) 3; Fowlerv. Superior (1893), 85 Wis. 411, 54 N.W. 800.
Sec. 3, art. XI, constitution of the state of Wisconsin, as adopted in 1849, contained this provision:
"No county, city, town, village, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to any amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness."
This provision has never been changed or modified except as hereinafter noted, and is still the law of this state. This court held in State ex rel. Morgan v. Portage (1921),174 Wis. 588, 184 N.W. 376, that a revenue bond issue by a municipality for the acquisition or construction of public utilities, such bonds being payable only from the revenue from the utilities and secured by mortgage liens thereon, did not create corporate indebtedness within the meaning of the constitutional limitation, but the court also held in that case that the bonds issued for improvements in a waterworks system rather than for its acquisition or construction, would create an indebtedness which would be within the prohibition of that part of sec. 3, art. XI, Const., already set out.
To partially avoid the result of State ex rel. Morgan v. Portage,supra, at the November, 1932, election, sec. 3, art. XI, Const., was amended by adding thereto the following: *Page 321 
"Providing, that an indebtedness created for the purpose of purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating or managing a public utility of a town, village or city, and secured solely by the property or income of such public utility, and whereby no municipal liability is created, shall not be considered an indebtedness of such town, village or city, and shall not be included in arriving at such five per centum debt limitation;"
thereby removing municipal indebtedness created for the purpose and in the manner therein prescribed from the prohibition of sec. 3, art. XI.
By ch. 230, Laws of 1935, subd. 13 of par. (b) of sub. (9) of sec. 66.06, Stats., was created. It is under the authority of subd. 13 that the plaintiff proposes to issue its bonds. It is as follows:
"Any city, village or town now or hereafter owning and operating a waterworks system and having controlled and operated and managed such waterworks system and which shall have expended moneys from its general fund or from the proceeds of its general obligation tax bonds, for the acquisition, construction, extension, improvement and operation of such waterworks system, or for any one or more of such purposes, may issue and sell waterworks mortgage bonds to procure funds to reimburse itself in an amount not exceeding the total amount of such expenditures not theretofore reimbursed. . . ."
The question for decision is, Is subd. 13, sec. 66.06 (9) (b), Stats., invalid because it authorizes a municipality to mortgage a utility owned and operated by it for the purpose of reimbursing itself "in an amount not exceeding the total amount of such expenditures not theretofore reimbursed?" The proviso adopted in 1932 does not authorize the issue of revenue bonds so-called by a city for the purpose of restoring to the general fund funds which it has provided by general *Page 322 
taxation or the issue of general-liability bonds and disbursed for the purpose of constructing a waterworks system. It authorizes the issue of such bonds solely for the purpose "of purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating or managing a public utility." It does not authorize a municipality to issue revenue bonds for the purpose of reimbursing its general fund. It is quite evident that the person who drafted the amendment was much more concerned with the interest of bondholders than that of taxpayers. There is no question but that the issue of the proposed bonds by the plaintiff would violate sec. 3 of art. XI, Const., as it stood prior to the adoption of the proviso. Therefore, if the issue of such bonds is not authorized by the amendment they fall within the prohibition of sec. 3. The statute authorizing the issue of such bonds is therefore in conflict with the amendment, and unconstitutional and void.
It does not appear that under the ordinance as adopted by the common council the issue of the bonds for the enumerated purposes are separable and for that reason it must be held that the entire issue falls within the restriction of sec. 3, art. XI, Const. The principal purpose of the issue was to restore $1,737,000 to the general fund.
It is argued that the statutory authority for the issuance of revenue bonds is to be distinguished from the constitutional limitation on municipal indebtedness. It is said that no constitutional provision prohibits the legislature from permitting a city to reimburse itself for funds already advanced for the acquisition of a waterworks utility. This is quite true if the city does not in the process exceed the constitutional debt limit. If it issues revenue bonds for any other purpose than those provided for by the amendment of 1932, the indebtedness created thereby will not be within the terms of that provision. It was conceded upon the argument that unless the city can issue these bonds under the proviso of 1932, the debt limit will be exceeded. *Page 323 
Some argument is made based upon the proposition that a municipality operates in two capacities, but whether it operates in a proprietary capacity or in a governmental capacity, it is the same city and subject to the same constitutional limitations.
It is sought to support the right of the defendant to issue the proposed bonds on the ground that they are "revenue bonds." It has been held that a municipality may pledge its revenues already provided for without thereby creating a debt within the meaning of sec. 3, art. XI, Const. Hebard v. AshlandCounty (1882), 55 Wis. 145, 12 N.W. 437.
The bonds proposed to be issued are not revenue bonds. Sec. 66.06 (9) (b) 2, Stats., is as follows:
"All moneys received from any bonds issued pursuant hereto shall be applied solely for purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating, or managing a public utility, and in the payment of the cost of any subsequent necessary additions, improvements and extensions, and there shall be and there is hereby granted and created a statutory mortgage lien upon the public utility to the holders of the said bonds and to the holders of the coupons of said bonds. The public utility shall remain subject to such statutory mortgage lien until the payment in full of the principal and interest of the bonds. Anyholder of the said bonds or of any coupons attached theretomay either at law or in equity protect and enforce the statutorymortgage lien hereby conferred, and compel performance of allduties required by this subsection of the municipality. If therebe any default in the payment of the principal or interest of anyof the said bonds, any court having jurisdiction of the actionmay appoint a receiver to administer the said public utility onbehalf of the said municipality, and the said bondholders, withpower to charge and collect rates lawfully established sufficientto provide for the payment of the operating expenses and alsoto pay any bonds or obligations outstanding against said utility,and to apply the income and revenues thereof in conformitywith this statute and the said ordinance, or the said courtmay declare the whole amount of said bonds due and payableand may order and direct the sale of the said public utility. *Page 324 Under any sale so ordered, the purchaser shall be vested withan indeterminate permit to maintain and operate the said publicutility. . . ."
What the legislature has authorized the municipality to do is to mortgage its property to secure the payment of a loan the purposes set out in subd. 2, sec. 66.06 (9) (b), Stats. Bonds, the payment of which may be enforced in case of default by a sale of the municipality's property, including the right and privilege to operate the same, are not revenue bonds although the revenues may also be pledged for the payment the bonds. Such bonds are straight mortgage bonds, and the remedies provided in sub. (9) (b) 2 can be invoked by the holder of a bond in default.
It is also argued that the proposed bonds can be issued on the theory that the issue comes within "the category of management." The word "management" is not found in the amendment of 1932. Management is one thing and "managing a public utility" of a municipality is another. "Management" is a noun and is defined as the "act or art of managing; the manner of treating, directing, carrying on, or using, for a purpose; conduct; control." Webster. Managing a public utility is the act performed by the one who is vested with the power of management. The provision of the amendment of 1932 can mean no more than the right to create an indebtedness for the purpose of hiring a manager. It certainly does not include reimbursing the general fund of the city which has already been invested in its utility plant. In addition to that, subd. 13, sec. 66.06 (9) (b), Stats., already set out does not attempt to authorize the issue and sale of waterworks mortgage bonds to reimburse itself for funds expended for "managing a public utility" or for "management." The issue of such bonds is limited to "acquisition, construction, extension, improvement and operation" of such waterworks system. Although the words "operation" and "managing a public utility" are used in the 1932 amendment, which makes one exclusive *Page 325 
of the other, only the word "operation" is used in subd. 13. Even if "management" bonds could be issued under the 1932 amendment, the issue of such bonds has not been provided for by the legislature.
It is also argued that the indebtedness of the water utility is not the indebtedness of the city of Madison; that the debtor-creditor relationship which will come into existence if the bonds are issued will be between the utility and the obligees of the revenue bonds; that as matters stand now the waterworks has been financed from the general fund and from proceeds of its general-obligation tax bonds; that for moneys expended from the general fund the city has a purchase-money lien against the waterworks and its earnings.
The city owns its waterworks plant free and clear of all liens and incumbrances except as it may be said it is incumbered by the issue of general tax bonds of the city. Just how the city can acquire a purchase-money lien upon the property which it has owned from the very beginning of its existence and never purchased, and the title to which it holds free and clear, is not explained. Those who seek to support the issue of bonds under subd. 13, sec. 66.06 (9) (b), Stats., seem to think of the utility as if it were an entity existing separate from the city. It has no corporate existence. It is like the city hall, the sewer system, and equipment owned by the city — merely a part of the city's property. The fact that the plant is designated a "public utility" and the city is required to set it up on its books as a separate operation does not incorporate it. The bonds, if issued, will be executed by the city not by the "public utility." The people have authorized municipalities to incumber part of their property for certain limited purposes. When incumbered for one of those designated purposes the amendment of 1932 provides that such incumbrance shall not be considered an indebtedness of the city.
No amount of eloquent argument or elucidation can put into the proviso of 1932 something that is not there. That proviso *Page 326 
did not authorize the issue of revenue bonds for the purpose of reimbursing a city for funds it had already expended. It is fallacious to say that the city by reimbursing itself is acquiring something that it had already acquired. The legislature having no authority under the proviso of 1932 to authorize the issue of revenue bonds to enable a municipality to reimburse itself, subd. 13, sec. 66.06 (9) (b), Stats, is unconstitutional and void.
By the Court. — The order appealed from is reversed, and the cause is remanded with directions to enter judgment for the plaintiff.