## Hartford Accident and Indemnity Co. v. Flanaghan

*Paul D. Edelman* and *Richardson Blair*, for plaintiff.

*John S. Rhoda*, for defendant.

SHANAMAN, J., January 5, 1950.—Hartford Accident and Indemnity Company, plaintiff, sued T. M. Flanaghan, defendant, in assumpsit on a book account to recover a net balance of premiums claimed to be due for various types of insurance. None of the items of the book account are in dispute except those relating to bond no. 1988964, with respect to which Flanaghan had admittedly paid the original premium. The dispute has arisen because Flanaghan contends that only a part of his premiums was earned, and that he, therefore, is entitled to a rebate. Both parties, through their counsel, stipulated at the trial that the respective claims of plaintiff and defendant are $2,329.27 and $774.21. Each party presented a single point for binding instructions in the amount of such party's

claim. Both parties, through their counsel, represented to the trial judge that no issue of fact was raised for the jury, although such representation does not appear of record. Neither counsel addressed the jury, nor moved for leave to address the jury. The court gave binding directions for plaintiff for $2,329.27, and reserved a point as to whether binding instructions should not have been given for defendant against plaintiff for $774.21. The jury returned a verdict for plaintiff for $2,329.27. Defendant filed rules for new trial and for judgment n. o. v. The sole issue under those rules, as stated in defendant's brief, is whether plaintiff was bound as surety on the bond in question for all of the work performed by Flanaghan under subcontract 956 and the change orders in question, alleged to pertain thereto, or whether plaintiff was only bound as surety in the sum of $58,989, which is the amount of work done by Flanaghan under his original engagement, and not including work done by him under the change orders in question. If plaintiff was bound to indemnify for any failure or defect of work done by Flanaghan under the change orders, it earned the full premium, because the amount of the work done by Flanaghan under the change orders plus the amount of work done in performance of his original obligation, exceeded the amount of the original contract and bond. If plaintiff had earned the full premium originally paid by defendant, defendant is entitled to no rebate, and the verdict for plaintiff was correct. If, on the other hand, plaintiff was not bound under its bond to indemnify as to defendant's work done under the change orders, defendant is entitled to a rebate and the verdict should be set aside and judgment should be entered for defendant Flanaghan, n. o. v., for $774.21. It is not alleged that defendant in any way defaulted in his performance of the work assigned him under his contract and the change orders.

The facts are as follows: Chas. H. Tompkins Co. was the United States Navy's wartime prime contractor for the construction of a naval training station at Bainbridge, Md., for $28,000,000, an amount subsequently greatly increased. Article 12 of the prime contract authorized the United States to make changes in the prime contract by addition or decrease, or diminution of projects, or other modification, whether or not the time required to perform was thereby altered. Various changes were from time to time made by the Government, greatly increasing the amount of the contract price. Defendant Flanaghan became the successful bidder as a subcontractor under Chas. H. Tompkins Co., on a contract to install water and sewage distribution systems, under and subject to the general contract, including all water and sewer connections for the various group areas, and service connections exterior to the areas and to the individual buildings. He was accordingly awarded subcontract no. 956, for $234,396. His agreement (exhibit no. 1) authorized change orders to vary the extent or amount of the work. Flanaghan supplied, as was required, an indemnity bond of plaintiff company, bond no. 1988964, for $234,396, and paid to plaintiff the premium. The bond covered the original subcontract and "any and all duly authorized modifications of said contract that may hereafter be made". Defendant's work had to do with four boot camps, located at four different spots on the general blue print of the training camp. His work was of the same general nature at each. He performed the work at group 4, being one of the boot camps, but was stopped by the contractor from doing the work under his contract at groups 1, 2 and 3. His work at group 4 amounted to $58,000, or more accurately $58,989. Groups 1, 2 and 3 were taken from him by the contractor and assigned to other persons in order to rush the job. Defendant does not dispute

the authority of the contractor to have done this. After defendant had completed group 4, the contractor asked him to bid on other similar work connected with the same training station, and he became the successful bidder and performed such additional work, to a total amount, including the $58,000, of $313,000. The full amount of this has either been paid or tendered by Chas. H. Tompkins Co. to defendant.

The additional work was done in accordance with four change orders dated, respectively, 10-26-42, 7-2-43, 8-18-43, and 8-23-43. Each was marked as a change order under order no. 956, defendant's original order and subcontract number. No new or separate contract was entered into between Tompkins Company and defendant for the additional work. No additional bond was given by defendant or requested from him for such additional work. The general contractor likewise was in possession of relevant change orders from the Government to the general contractor. Of the work done by Flanaghan, under the change orders, all was outside groups 1, 2, 3 and 4; some was physically outside the Naval base, and some physically inside the Naval base; all of them were connected with the necessary construction of the Naval base. Some of the additional work was contained in the original plans, and some was not. All the work was for the base and done at or near it, and all was of the same general nature, viz., sewer and water system construction.

Since the Government retained power under its general contract to change the work contracted to be done, or even the projects themselves, subject to equitable adjustment with the contractor, and since the subcontractor contracted with the contractor subject to the provisions of the general contract between the general contractor and the Government, and since defendant's subcontract also permitted change orders to be made or given subject to equitable adjustment

(exhibit 1, art. V), and since the changes were all within the scope of the contractor's as well as the nature of the subcontractor's original service, and were all for the construction of the same great object, viz., the national training camp, it is reasonable to regard the modifications as mere changes of the amount and of the exact locus of the physical service to be rendered by defendant, without any substantial alteration of the fundamental purpose either of the subcontract, the kind of work, or the location or identity of the main object, to wit, the training camp. It follows that all the work done by defendant was done under his subcontract no. 956, and basic purchase order no. 956 by means of lawful change orders thereunder.

It is true that defendant's four change orders came after the date on which he had contracted to complete his performance of the work originally assigned to him. This circumstance in a project of such magnitude as the training camp ought not to control the decision, inasmuch as new ideas such as the Happy Valley Interceptor were naturally to be expected to suggest themselves and find approval with the Government (United States Navy). The further fact that Chas. H. Tompkins Co. saw fit to ask for bids for the new work given to defendant is not controlling, since the general contractor was free, whether with or without bids to negotiate and assign such work either to defendant or to a third person. More significant in our opinion is the fact that no new bond was exacted from defendant or given by him, although the work assigned to and done by him eventually exceeded his original subcontract and its accompanying bond. For any such increase, he agreed with plaintiff to pay a correspondingly increased additional premium. It appears, therefore, that also from the course of conduct of the parties interested, the conclusion must be reached that the

additional work was deemed by them to be covered by the original bond.

We have read all the cases cited by defendant. In Freund et al. v. U. S., 260 U. S. 60, the court held it impossible to fix a fair compensation for Freund by reference to his original contract, because of the entire dissimilarity of the additional work to that called for by his original contract. To the contention that Freund's performance of the additional work amounted to a consent by him to be compensated under the original contract, the court replied that under the circumstances he was subject to an unfair duress. In the present case, on the other hand, there is no such dissimilarity between the work originally contracted for and that ordered through the change orders, nor does the price of the original work assigned to defendant bear, either by the amounts or through any averment, any aspect of duress, since such price was fixed by defendant's own bid. The case of Morse et al. v. City of Boston et al., 253 Mass. 247, 148 N. E. 813 (1925), involved the powers of the City of Boston, a subordinate municipal body of the Commonwealth of Massachusetts, under the statutes restricting such powers. It is not germane to the present case. The case of Mueller et al. v. Eau Claire County et al., 108 Wis. 304, 84 N. W. 430 (1900), involved an admitted departure from what the court held was the mandate of the statute, which restricted the power of the county to contract. The case is not apposite to the present facts. The general proposition that an alteration of a contract by the principal parties, without the assent of the surety, is fatal to its enforcement against the surety, "has no application to a building contract which by its terms contemplates or expressly provides for changes": Koch v. Moyer and Burkhart, 103 Pa. Superior Ct. 270, 273. Any doubt as to the meaning of the guaranty of a compensated surety "is to be resolved

against it": Monongahela Street Railway Co. v. Phila. Company et al.; 350 Pa. 603, 617. That present plaintiff's premium was earned in full is supported by the case of Union Indemnity Co. v. Perry, 151 S. E. 629 (N. Car. 1930), 158 S. E. 560 (N. Car. 1931). We conclude that there was no error in giving binding instructions for plaintiff.

And now, to wit, January 5, 1950, defendant's rules for new trial and for judgment n. o. v. are discharged.