163 So.2d 348 (1964)
246 La. 51
JEFFERSON PARISH SCHOOL BOARD et al.
v.
JEFFERSON PARISH DEMOCRATIC EXECUTIVE COMMITTEE et al.
No. 47194.
Supreme Court of Louisiana.
April 17, 1964.
Dean A. Andrews, Jr., New Orleans, Benjamin J. Trombatore, Kenner, David Treen, New Orleans, Jack P. F. Gremillion, *349 Atty. Gen., Weldon Cousins, Asst. Atty. Gen., Frank Langridge, Dist. Atty., for defendants-appellants.
Nathan Greenberg, Gilbert P. Cohen, Gretna, for defendants-appellees.
HAMLIN, Justice.
In this declaratory judgment proceeding (LSA-C.C.P. Arts. 1871-1883), plaintiffs prayed for judgment decreeing that Act 85 of 1960,[1] particularly LSA-R.S. *350 17:60(A), (B), (C), (E), (F), and (G), is unconstitutional and ineffective. They further prayed that the Jefferson Parish Democratic Executive Committee be ordered to call such elections as may be necessary for the Jefferson Parish School Board pursuant to the terms of the general school laws of the State of Louisiana, without regard to the provisions of Act 85 of 1960. They still further prayed for judgment decreeing that the Jefferson Parish School Board is governed by the general school laws of the State of Louisiana with regard to the holding of regular meetings, dual office holding of its members, and endorsement of a candidate for the school board, without regard to the provisions of Act 85 of 1960.
In their answer, the Jefferson Parish Democratic Executive Committee and its members averred that a real, substantial, and actual controversy existed in connection with the subject matter, and that the matter was justiciable and was a proper subject for declaratory relief. The defendants specifically averred that until such time as the court decided the matters raised, the administration of the Public School System of the Parish of Jefferson was in danger. They further averred that it was in the best interest of the Democratic Party of the Parish of Jefferson and the State of Louisiana, as well as the Parish of Jefferson and its citizens, to determine the matter prior to the date, time, and places for the election to be called in order that fairness as well as feasibility to the candidates for nomination and the voting public be maintained. Defendants prayed for judgment in their favor, dismissing plaintiffs' demands at their costs and with prejudice.
The trial court halted the proceedings and required that plaintiffs join as parties defendant the Parish Executive Committee of each recognized political party as defined by law and each member of the Jefferson Parish School Board not a party plaintiff within ten days of the rendition of the judgment under penalty of dismissal.
Plaintiffs complied with the judgment of the trial court, and after naming additional parties defendant they prayed for the same relief requested in their original petition. All parties defendant prayed for dismissal of plaintiffs' suit.
*351 The trial court rendered a declaratory judgment in favor of plaintiffs, declaring that Act No. 85 of 1960, LSA-R.S. 17:60, was unconstitutional, null, and void; it granted plaintiffs the relief originally prayed for. The Jefferson Parish Democratic Executive Committee and the Jefferson Parish Republican Executive Committee appealed from said judgment to the Court of Appeal, Fourth Circuit. The appeal was transferred to this Court pursuant to the authority vested in the Court of Appeal by LSA-C.C.P. Art. 2162; the cause has now been submitted for our determination on appeal.[2]
The instant proceeding was provoked by the decision of Mendel v. Gennaro, 154 So. 2d 531, Court of Appeal, Fourth Circuit, wherein the Court of Appeal held that LSA-R.S. 17:60(D) governing the election of officers of the Jefferson Parish School Board is a local or special law, prohibited by the Constitution, and that plaintiffs' tenure was governed solely by LSA-R.S. 17:54.
The Mendel Case was a quo warranto proceeding. At a meeting held on December 5, 1962, plaintiffs therein were elected to the offices of president, vice-president, and executive committeeman, for a period of one year under the provisions of LSA-R.S. 17:60(D). At an alleged illegal meeting of the Jefferson Parish School Board on January 7, 1963, plaintiffs were removed from office and defendants were elected to replace themthe vote for removal being nine to eight. The Court of Appeal held that one person voting at the January 7, 1963 meeting was disqualified from voting because he had forfeited his membership on the School Board by accepting an office of profit and trust under the federal government. Art. XIX, Sec. 4, La.Const. of 1921. The vote, therefore, resulted in a tie. In addition to holding LSA-R.S. 17:60(D) unconstitutional and Samuel J. McGrew ineligible to hold or exercise the functions of a Member of the Jefferson Parish School Board, the Court of Appeal in its judgment held:
"That plaintiffs are entitled to be restored forthwith to the respective offices to which they were elected December 5, 1962, until removed at a valid meeting and by a valid vote of the legal members of the Board;
"The judgment of the District Court is reversed [the district court dismissed plaintiffs' suit], and this case is remanded to the District Court to issue such orders as may be necessary to enforce the judgment of this Court; ***."
In refusing to grant Certiorari in the Mendel Case, this Court held: "Writ refused. The result is correct." We did not, therefore, pass upon the correctness of that part of the decision which held that LSA-R.S. 17:60(D) was unconstitutional.
In the instant case, the trial court stated that the basic issue in its consideration of Act 85 of 1960 was whether it was a "local or special law" prohibited by Article IV, Section 4, of the Louisiana Constitution of 1921. The trial court found that Article XII, Section 10, of the Louisiana Constitution of 1921, does give the Legislature authority to provide for the creation and election of parish school boards. But, the trial court further found that it was constrained to declare the entire statute unconstitutional because of the finding in the Mendel Case, supra, that, "Clearly, from a reading of these articles of the Constitution [Art. XII, Secs. 10 and 11, La.Const. of 1921], the only local or special laws regarding school boards which are valid, are those in existence at the time of the adopting of the 1921 Constitution. We find no local or special law governing the Jefferson Parish *352 School Board in effect when the 1921 Constitution was adopted."
Herein, the trial court stated:
"* * * Under Art. 4, Sec. 4 alone, it is possible to make out a case and distinguish `regulating the management of public schools' from the creation and election of parish school boards, but if Art. 12, Sec. 11 must apply as stated, no such distinction can be made. However regrettable it may seem, this Court can only declare the unconstitutionality of the statute and refer the matter back to the parties to seek either appellate relief or legislative relief, or a combination of both."
Counsel for the Jefferson Parish Republican Executive Committee urges this Court to overrule the decision of Mendel v. Gennaro, supra. He further urges that in the instant matter the decision of the trial court should be reversed and Act 85 of 1960 declared a valid and constitutional exercise of the legislative power.
Counsel for the Jefferson Parish Democratic Executive Committee urges especially that LSA-R.S. 17:60(A), (B), and (C) are constitutional.
Counsel for plaintiffs urge that in view of the pronouncements of the Fourth Circuit Court of Appeal in the decision of Mendel v. Gennaro, supra, the decision of the trial court is correct in the instant case and further submit that its judgment should be affirmed.
It is a matter of common knowledge that Jefferson Parish has recently experienced a substantial increase in population; its School Board occupies a position of prominence, and its membership is a matter of immediate concern. Act 522 was adopted in 1952 and provided that the School Board should consist of five members; this Act became LSA-R.S. 17:60 (a new section). Act 522 was adopted at the same session of the Legislature which adopted Act 170 of 1952 which established a Commission Council form of government as the governing authority for the Parish of Jefferson.[3] In June, 1956, this Court declared Act 170 of 1952 unconstitutional, null, and void, in the case of Ladnier v. Mollere, 230 La. 784, 89 So.2d 301. Act 211 of 1954 reenacted the five man plan School Board for Jefferson Parish; Act 420 of 1956 increased the membership of the Jefferson Parish School Board according to the population of each Ward. An amendment to the Constitution, Article XIV, Sec. 3(c), adopted November 6, 1956, provided that the people of Jefferson Parish should have the power to establish a form of government in one of the manners therein provided. A councilmanic form of government has now been established. Act 431 of 1958 specifically repealed LSA-R.S. 17:60. The Jefferson Parish School Board was then governed by the general laws pertaining to school boards until the adoption of Act 85 of 1960 which again added LSA-R.S. 17:60.
We now approach a determination of the constitutionality of the latter Act.
Article IV, Section 4, of the Louisiana Constitution of 1921, provides:
"The Legislature shall not pass any local or special law on the following specified subjects:
"For the holding and conducting of elections, or fixing or changing the place of voting.
"* * *
"Regulating the management of public schools, the building or repairing of *353 schoolhouses and the raising of money for such purposes, except as otherwise provided in this Constitution.
"* * *"
Article IV, Section 6, of the Louisiana Constitution of 1921, provides:
"No local or special law shall be passed on any subject not enumerated in Section 4 of this article, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or things to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill, and in the same manner provided by law for the advertisement of judicial sales. The evidence of such notice having been published shall be exhibited in the Legislature before such act shall be passed, and every such act shall contain a recital that such notice has been given."
In a large number of cases where the court has had for its consideration the question of whether a law was a special or local law, it had to determine the matter under Art. IV, Sec. 6, supra, rather than under Art. IV, Sec. 4. In Kotch v. Board of River Port Pilot Com'rs, 209 La. 737, 25 So.2d 527, affirmed, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093, we held that an act regulating the system of river port pilotage for the Port of New Orleans, providing for a board of river port pilot commissioners, defining its duties, prescribing the necessary qualifications for port pilots and fixing their charges was not a local or special law. We said:
"* * * The test of whether a law is special or local is whether it operates only on a certain number of persons, within a class, but does not affect generally all persons within that class. The regulation by the Legislature of pilotage between Southport and Pilot Town without attempting to regulate it where such regulation is not needed is a matter solely for legislative determination. It would lead to an absurd result for the Legislature, in the exercise of the sovereign powers of the State, to prescribe regulations for pilots on every bayou and stream in the State. * * * No argument is necessary to sustain the proposition that the Legislature is not required to regulate pilotage where such regulation is not needed in order to regulate pilotage where such pilotage is needed."
In State v. Clement, 188 La. 923, 178 So. 493, this Court held that a statute prohibiting trapping upon certain swamp lands without the owner's consent was not enacted pursuant to Art. IV, Sec. 6, La.Const. of 1921, supra. We made a lengthy study in the case of "local and special laws" and stated:
"It will hardly be disputed that any statute which does not operate equally upon all of a designated class of property or citizens of the state; which, on account of its restrictions, can touch but a portion of the designated class of property, but a fraction of the designated class of citizens of the state, is a local and not a general law.
"* * *
"A local or special law is one which, because of its restrictions, can operate upon or affect only a portion of the citizens, a fraction of the property embraced within the classification created."
In State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778, we had presented for our consideration a statute providing for the payment of the salaries of deputies of the Criminal Sheriff of the Parish of Orleans. We upheld the constitutionality of the statute, stating:
"The fact that the deputies are paid by the City of New Orleans is of no moment in determining whether a law *354 passed for the purpose of fixing their salaries is a local or special law. The words `local' or `special' law as used in Section 6 of Article IV of the Constitution have been declared in numerous cases to refer to such laws wherein private individuals are seeking some private advantage or advancement for the benefit of private persons or property within a certain locality. * * *" See, 82 C.J.S. Statutes, §§ 166 and 168; 50 Ann.Jur., Statutes, Secs. 7 and 8; Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508.
As stated supra, the Jefferson Parish School Board was operated under the general laws of this State providing for "Education," at the time of the enactment of Act 85 of 1960, LSA-R.S. 17:60. This Act provides for the election of the members of the Jefferson Parish School Board; it provides that there shall be ten members and sets forth the division of the Parish from which they shall be elected; it prohibits certain conduct which might provoke a conflict of interest; it provides for the election of the president of the Board; it provides for the holding of meetings of the Board; and it imposes penalties for its violation.
Conceding that Act 85 of 1960 may be a "local or special law" under the authorities quoted supra, our jurisprudence is replete to the effect that all local or special laws are not invalid per se where there has been a compliance with Art. IV, Sec. 6, La.Const. of 1921. Here, there was a compliance with Sec. 6 of Art. IV; we have only to find whether the instant Act was permissible legislation and did not embrace a subject prohibited by Sec. 4 of Art. IV, La.Const. of 1921, supra.
Article XII, Section 10, of the Louisiana Constitution of 1921, provides:
"The Legislature shall provide for the creation and election of parish school boards which shall elect parish superintendents for their respective parishes, and such other officers or agents as may be authorized by the Legislature. The State Board of Education shall fix the qualifications and prescribe the duties of parish superintendents who need not be residents of the parishes. Wherever a parish contains a municipality, the population of which is more than one-half of that of the entire parish, it shall have representation on the parish school board proportionate to its population."
School boards are agencies of the State of Louisiana as administrators of a system of public education which is a function of the sovereign. Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793; Terrebonne Parish Sch. Bd. v. St. Mary Parish Sch. Bd., La.App., 131 So.2d 266, 242 La. 667, 138 So.2d 104, cert. denied, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed. 2d 497. School boards are public boards of the State or subdivisions thereof. Chase v. Pointe Coupee Parish School Board, La. App., 89 So.2d 466. School boards are not local subdivisions of the state but are, like the local subdivisions, created by the Legislature. State v. Coulon, 197 La. 1058, 3 So.2d 241. A statute creating a school board for the Parish of Orleans to consist of five members and providing for interim appointments by the Governor is valid under Art. XII, Sec. 10, La.Const. of 1921. Singlemann v. Davis, 240 La. 929, 125 So.2d 414.
We conclude that the Legislature acted within its powers in enacting legislation providing for a school board for Jefferson Parish; we find no constitutional prohibition prohibiting such enactment. Art. XII, Sec. 11, La.Const. of 1921, which recognized existing municipal or parish school boards is not restrictive; it merely recognized those boards in existence at the time of its enactment.
The instant statute does not provide for an election prohibited by Art. IV, Sec. 4, supra. The remaining question for determination is whether it provides for the management of public schools.
*355 Webster's New World Dictionary, College Edition, defines "management" as follows:
"the act, art, or manner of managing, or handling, controlling, directing, a being managed. 2. skillful managing; careful, tactful treatment. 3. skill in managing; executive ability. * * *"
"* * * `Management' is defined as `government; control; superintendence; physical or manual handling or guidance; the act of managing by direction or regulation; administration, as the management of a family, or of a household, or of servants, or of great enterprises, or of great affairs.' * * *" In re Sanders, 53 Kan. 191, 36 P. 348, 349, 23 L.R.A. 603.
"* * * The word management may be defined as, conduct, administration, guidance, control, judicious use of means to accomplish an end. The words general management are sufficiently comprehensive to convey to the mind a legislative intent to confer upon the department of education authority to deal with the conduct of the State teachers colleges in all of the details of their control and administration. * *" Lynch v. Commissioner of Education, 317 Mass. 73, 56 N.E.2d 896, 900. See, Roberts v. City of Madison, 250 Wis. 317, 27 N.W.2d 233, 236.
"* * * And our courts have defined the word Management, as applied to a vessel, to mean the direction and physical or manual control of such vessel * * *" Whiteman v. Rhode Island Ins. Co., D.C., 78 F.Supp. 624.
"MANAGEMENT. A word of comprehensive meaning, usually signifying positive, rather than negative, conduct, and relating to guidance and control.
"It is variously defined as administration; care; conduct; control; direction; guidance; physical or manual handling or guidance; superintendence; government; carrying on.
"The term has also been defined as meaning having the general management, conduct, or direction of something; the act or art of managing; the act of managing by direction or regulation; the manner of treating, directing, carrying on, or using for a purpose; an exercise of conduct in carrying on a business; judicious use of means to accomplish an end.
"* * *". 55 C.J.S. Management, p. 2.
We find that under the above definitions, the phrase "management of public schools" would have to do with the propriety of school curriculums, methods of teaching, grade levelling, time schedules, classroom procedure, some aspects of teaching, some aspects of discipline and conduct, physical training, some aspects of financing, and other matters directly related to the control, guidance, direction, and management of the Jefferson Parish schools themselves. Cf. State ex rel. Williams v. Avoyelles Parish School Bd., La.App., 147 So.2d 729.
We find nothing in Act 85 of 1960 which controls the Members of the Jefferson Parish School Board in the performance of their duties with respect to the management of the Jefferson Parish public schools. We find nothing in Act 85 of 1960 which treats of the "management of public schools." We conclude that Act 85 of 1960 is not violative of Article IV, Sec. 4, La.Const. of 1921; it was enacted pursuant to a valid exercise of legislative power and is therefore declared to be constitutional.
The case of Mendel v. Gennaro, 154 So.2d 531, insofar as it declared LSA-R.S. 17:60 (D) unconstitutional, is overruled.
For the reasons assigned, the judgment of the trial court is reversed and set aside. Plaintiffs' suit is dismissed at their costs.
HAMITER, J., concurs in the result.
NOTES
[1] "To amend Title 17 of the Louisiana Revised Statutes of 1950 by adding thereto a new Section to be designated as Section 60 thereof, to provide for the Jefferson Parish School Board.

"Notice of intention to apply for the passage of this Act has been published and evidence of such publication exhibited to the Legislature, both as provided by Section 6 of Article IV of the Constitution of Louisiana.
"Be it enacted by the Legislature of Louisiana:
"Section 1. Section 60 of Title 17 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:
"§ 60. Jefferson Parish School Board.
"A. All members of the Jefferson Parish School Board holding office on the effective date of this Section shall continue in office until the members elected in 1964 in accordance with the provisions of this Section are elected and take office or until the expiration of their respective offices, whichever is sooner. Those members of said school board elected thereto at the congressional election to be held in 1960 shall serve for terms of four years each, and those members elected to said board in the congressional election to be held in 1962 shall serve for terms of two years each. The number of members of the Jefferson Parish School Board shall not be changed until the election for school board members to be held at the congressional election in 1964.
"B. Effective with the election for school board members to be held at the congressional election in 1964 and thereafter, there shall be ten members of the Jefferson Parish School Board, two of whom shall be residents of and be elected from each of the four councilmanic districts as such districts exist on the effective date of this Section, one of whom shall be a resident of and be elected from that portion of Jefferson Parish lying on the east bank of the Mississippi River, and one of whom shall be a resident of and be elected from that portion of the parish lying on the west bank of the Mississippi River. One of the two members to be elected from each of said councilmanic districts in 1964 shall be elected for a term of two years and one shall be elected for a term of four years, and each candidate for each of said offices shall, at the time he qualifies, specify whether he seeks a two-year or a four-year term. The other two members, to be elected to the board in 1964 from those portions of the parish lying on the east and west banks of the Mississippi River, respectively, shall be elected for terms of six years each. Thereafter all members of the board shall be elected for terms of six years each. [Emphasis ours.]
"C. No member of the Jefferson Parish School Board shall hold or exercise any other salaried office, salaried position, or salaried employment for profit under the state of Louisiana or any political subdivision thereof; provided, however, that this provision shall not apply to any person serving as a member of the Jefferson Parish School Board at the effective date of this Section during his current term of office. Whenever any such school board member accepts any employment, office or position in violation of this Act, his school board office shall thereby be vacated.
"D. The president of the board shall be elected annually by the members of the board from among the membership of the board. He shall not be eligible to succeed himself, nor shall he be eligible for re-election as president for three years after the expiration of the term as president for which he was elected.
"E. The board shall hold regular meetings at its domicile not less than once each month and may hold special meetings at any time or place the board considers it necessary.
"F. No organization or elected official shall campaign for, endorse or support any candidate for the school board.
"Any person who violates the provisions of this subsection shall be fined not less than $50.00 nor more than $200.00 or be imprisoned for not more than 90 days, or both; provided, however, that nothing contained herein shall affect the selection of nominees of recognized political parties as a result of primary elections.
"G. The general school laws in Title 17 of the Louisiana Revised Statutes of 1950 shall govern the Jefferson Parish School Board in all cases not in conflict with the provisions of this Act.
"Section 2. This Act shall take effect only after the question of its approval has been submitted to the qualified voters of Jefferson Parish in a referendum to be held at the time of congressional elections to be held in November, 1960 and a majority of those voters voting have voted in favor of it. The vote shall be cast on voting machines and the question to be presented to the qualified electors of the parish shall be included on the same ballot that is used in the said congressional election and shall be presented in the following form:
"FOR the establishment of a ten member school board in the Parish of Jefferson
"and also:
"AGAINST the establishment of a ten member school board in the Parish of Jefferson
"The results of said referendum shall be certified by the Board of Election Supervisors to the Secretary of State of the state of Louisiana, who shall promulgate the same without delay by publication in the official journals of the state of Louisiana and of the Parish of Jefferson. If a majority of those voters voting have voted in favor of a ten member school board, this Act shall become effective at 12 o'clock noon on November 29, 1960.
"Section 3. If any clause, sentence, paragraph, section or part of this Act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment shall have been rendered.
"Section 4. All laws or parts of laws in conflict herewith and in particular Act 420 of the regular session of 1956 are hereby repealed.
"Approved by the Governor: June 22, 1960."
[2] "The following cases only shall be appealable to the Supreme Court: * * * (2) Cases in which an ordinance of a parish, municipal corporation, board or subdivision of the state, or a law of this state has been declared unconstitutional;" Art. VII, Sec. 10, LSA-Const. of 1921.
[3] "Act 170 of 1952 purports, among other things, to abolish the Police Jury system of government of Jefferson parish and to substitute therefor a Commission Council composed of five members, one of whom is elected at large and the other four from districts established by the Act. This Act was submitted to and approved by a majority of the electors of the parish of Jefferson at a special referendum election held in connection with the general election of November 4, 1952." Ladnier v. Mollere, 230 La. 784, 89 So.2d 301.